******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ATLANTIC ST. HERITAGE ASSOCIATES, LLC
# *v.* ATLANTIC REALTY COMPANY ET AL.
## (AC 43857)

Elgo, Moll and Pellegrino, Js.

*Syllabus*

The plaintiff, an entity that owned commercial real property, sought, inter alia, injunctive relief enjoining the defendants, various entities that owned or leased commercial property located to the south of the plaintiff's property within the same city block, from interfering with the plaintiff's right to use a claimed easement area. The plaintiff acquired its real property in 1982, and the defendants, which were all owned or controlled by members of the same family, purchased their respective real properties between 1988 and 2014. Since the acquisition of its property, the plaintiff's members, employees, tenants, and invitees have used a twelve foot wide alleyway located between two of the properties owned by certain of the defendants and a portion of the paved area behind the defendants' properties to access its own gated parking lot. In 2015, the defendants erected a gate at the end of the alleyway that connected to the street and installed a chain barrier across the end of the alleyway that abutted the paved area. During the hours when the retail business that operated out of the defendants' properties was closed, the defendants locked the gate and put the chain barrier in place. After the defendants refused to provide the plaintiff with a key to the gate, the plaintiff commenced the present action, alleging, in its operative complaint, that it had a prescriptive easement over the alleyway and a portion of the paved area. The defendants asserted five special defenses to the plaintiff's complaint prior to its filing of the operative complaint. Thereafter, the plaintiff filed a motion for summary judgment, and the defendants filed a cross motion for summary judgment. The trial court heard oral argument on the parties' cross motions. Thereafter, without seeking leave of the court, the defendants filed an answer to the plaintiff's operative complaint and filed amended special defenses, which reasserted the five original special defenses and also asserted five new special defenses. The trial court granted the plaintiff's motion for summary judgment and denied the defendants' cross motion for summary judgment. On the defendants' appeal to this court, *held*:

1. The trial court improperly granted the plaintiff's motion for summary judgment:

a. To invoke the trial court's authority to grant the plaintiff's motion for summary judgment, the plaintiff was obligated to address any special defenses to its operative complaint that the defendants had properly asserted in accordance with the rules of practice and, in moving for summary judgment, the plaintiff addressed only one of the defendants' five original special defenses: the trial court improperly adjudicated, sua sponte, the defendants' other four original special defenses that asserted waiver, estoppel, unclean hands, and laches; moreover, the plaintiff was not obligated to address the defendants' new special defenses and the trial court did not err in rejecting the same on procedural grounds because those defenses were not properly before the court, as the defendants did not file them until approximately three weeks after the date of oral argument on the parties' motions for summary judgment, which was beyond the filing period prescribed by the applicable rule of practice (§ 10-61), and they did so without obtaining the trial court's permission.

b. The defendants' claim that the trial court improperly determined that there were no genuine issues of material fact as to the plaintiff's prescriptive easement claim was unavailing: the trial court properly rejected the relevant portion of the affidavit submitted in connection with the defendants' cross motion for summary judgment by M, one of the family members who controlled the defendants, because it did not constitute competent evidence pursuant to the applicable rule of practice (§ 17-46), as M's averments regarding the frequency with which the plaintiff used the alleyway were conclusory rather than factual, in that they lacked

any indication of the regularity and frequency of M's observations of the vehicular traffic in the alleyway and over the paved area and evidenced his limited familiarity with the plaintiff and his inability to recognize vehicles driven by any of the plaintiff's owners, employees, clients or tenants, other than two individuals; moreover, the trial court did not err in concluding that there were no genuine issues of material fact that the plaintiff's use of the alleyway was under a claim of right because the plaintiff's failure to respond to occasional closures of the alleyway during the prescriptive period did not, on its own, imply that the plaintiff recognized a superior right of the defendants to the alleyway and the defendants' evidence that the parties were friendly with one another and shared parking spaces under certain circumstances was too speculative to infer implied permission on behalf of the defendants, as those facts were disconnected from the plaintiff's use of the alleyway; furthermore, the trial court did not err in concluding that there were no genuine issues of material fact as to whether the plaintiff's use of the claimed easement area was distinguishable from the public's use of that area, and, by comparing the use of both the alleyway and the paved area, the court conducted the correct analysis in making that determination because the plaintiff alleged in its operative complaint that it had acquired a prescriptive easement over both the alleyway and a portion of the paved area, and the defendants' special defense that asserted that the trial court should have considered only the use of the alleyway was procedurally improper because it was raised in the pleading that was filed in violation of Practice Book § 10-61.

2. The defendants' claim that the trial court improperly denied their cross motion for summary judgment was unavailing: the defendants' claim that the plaintiff could not seek to establish both deeded and prescriptive easements was not properly before the trial court because the defendants did not include such claim in their summary judgment submissions and, instead, asserted it for the first time at oral argument on the parties' motions for summary judgment and reasserted it in the pleading that the trial court deemed was procedurally improper pursuant to Practice Book § 10-61; moreover, because the defendants did not challenge on appeal the trial court's rejection of the claim on procedural grounds, this court did not reach the merits of the claim; furthermore, even if this court assumed that the defendants had properly raised the claim before the trial court, it would still fail because the plaintiff abandoned its deeded easement claims by withdrawing those counts from its complaint and by filing its operative complaint, which alleged only a prescriptive easement over the claimed easement area.

Argued September 9, 2021—officially released November 22, 2022

*Procedural History*

Action for, inter alia, a temporary and permanent injunction prohibiting the defendants from restricting the plaintiff's access to a claimed easement area, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator, J.*, granted the plaintiff's motions to cite in 200 Atlantic, LLC, and 210 Atlantic, LLC, as party defendants; thereafter, the court, *Hon. Kenneth B. Povodator,* judge trial referee, granted the plaintiff's motion for summary judgment, denied the defendants' cross motion for summary judgment, and rendered judgment thereon, from which the defendants appealed to this court. *Reversed in part*; *further proceedings.*

*Arthur N. Chagaris*, pro hac vice, with whom was *John R. Harness*, for the appellants (defendants).

*Michael J. Cacace*, with whom, on the brief, was *Nicholas W. Vitti, Jr.*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants, Atlantic Realty Company, 200 Atlantic, LLC, 210 Atlantic, LLC, 252 Atlantic Street, LLC, and Safavieh Atlantic, LLC, appeal from the judgment of the trial court granting a motion for summary judgment filed by the plaintiff, Atlantic St. Heritage Associates, LLC, and denying their cross motion for summary judgment vis-à-vis the plaintiff's second amended complaint claiming a prescriptive easement over certain property at issue.[1] As to the summary judgment rendered in favor of the plaintiff, the defendants claim that the court (1) lacked the authority to grant the plaintiff's motion for summary judgment because, in moving for summary judgment, the plaintiff failed to address their special defenses, and (2) improperly determined that no genuine issues of material fact exist as to the plaintiff's prescriptive easement claim.[2] We agree in part with the defendants' first claim that the court lacked the authority to grant the plaintiff's motion for summary judgment, such that we reverse the summary judgment rendered in favor of the plaintiff and remand the case for further proceedings. Additionally, because it is sufficiently likely to arise on remand, we will address the defendants' second claim that the court incorrectly determined that there are no genuine issues of material fact regarding the plaintiff's prescriptive easement claim. As to the denial of their cross motion for summary judgment, the defendants claim that, as a matter of law, the plaintiff is precluded from asserting both deeded and prescriptive easement rights simultaneously. This claim is untenable. Accordingly, insofar as the defendants appeal from the denial of their cross motion for summary judgment, we affirm the judgment of the trial court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. In 1982, the plaintiff acquired commercial property located at 184 Atlantic Street in Stamford. Between 1988 and 2014, the defendants, which are entities owned or controlled by several nonparty family members, acquired parcels of commercial property situated to the south of the plaintiff's property on the same city block. Specifically, Atlantic Realty Company acquired 234 Atlantic Street in 1988; 252 Atlantic Street, LLC, acquired 252 Atlantic Street in 1994; and 200 Atlantic, LLC, and 210 Atlantic, LLC, acquired 200 Atlantic Street and 210 Atlantic Street, respectively, in 2014.[3] Safavieh Atlantic, LLC, is a retail rug and furniture business, owned by the family members who own or control the other defendants, that leases the premises at those locations.

Located between 234 Atlantic Street and 252 Atlantic Street is a twelve foot wide alleyway (alleyway) providing a route from Atlantic Street to a paved area behind 200 Atlantic Street, 210 Atlantic Street, and 234 Atlantic

Street (paved area), which connects to a gated parking lot that services the plaintiff's property.[4] In 2015, the defendants erected a gate at the western end of the alleyway facing Atlantic Street and installed a chain barrier across the eastern end of the alleyway abutting the paved area. The defendants lock the gate and put the chain barrier in place during the hours when Safavieh Atlantic, LLC, is closed for business. The defendants have refused to provide the plaintiff with a key to the gate.

In July, 2016, the plaintiff commenced the present action against Atlantic Realty Company, 252 Atlantic Street, LLC, and Safavieh Atlantic, LLC. In count one of its original, three count, verified complaint, the plaintiff alleged that it owned a deeded easement right to the alleyway. In count two, the plaintiff alleged that, pursuant to General Statutes § 47-37, it had acquired a prescriptive easement over the alleyway. In count three, the plaintiff alleged that it owned a deeded easement right to a thirty foot right-of-way in the paved area linking the alleyway to the plaintiff's parking lot. On October 28, 2016, Atlantic Realty Company, 252 Atlantic Street, LLC, and Safavieh Atlantic, LLC, filed a verified answer denying the plaintiff's material allegations. Additionally, these defendants asserted five special defenses directed to all three counts of the original complaint, namely, (1) failure to state a claim on which relief can be granted, (2) waiver, (3) estoppel, (4) unclean hands, and (5) laches.[5]

On November 14, 2017, the plaintiff filed a motion to cite in 200 Atlantic, LLC, and 210 Atlantic, LLC, as additional defendants and requested permission to file an amended, verified complaint. On December 8, 2017, after the trial court, *Povodator*, *J.*, had granted its motion without objection, the plaintiff filed an amended, three count, verified complaint, which was identical to the original complaint other than (1) setting forth the interests of 200 Atlantic, LLC, and 210 Atlantic, LLC, and (2) expanding the scope of count two by alleging a prescriptive easement over both the alleyway and a portion of the paved area connecting the alleyway to the plaintiff's parking lot. Atlantic Realty Company, 252 Atlantic Street, LLC, and Safavieh Atlantic, LLC, did not plead further in response to the amended complaint, whereas 200 Atlantic, LLC, and 210 Atlantic, LLC, filed an answer and special defenses that tracked the other defendants' October 28, 2016 pleading.

On April 26, 2019, the plaintiff filed a motion for summary judgment, accompanied by a supporting memorandum of law, exhibits, and affidavits, as to count two of its amended complaint alleging a prescriptive easement. Among the affidavits submitted by the plaintiff were personal affidavits of Richard A. Silver and David S. Golub, two of the plaintiff's members, and of Jonathan A. Blauner, an employee of the plaintiff. On

June 18, 2019, the defendants filed a memorandum of law in opposition to the plaintiff's motion for summary judgment, accompanied by exhibits and affidavits, and, on June 21, 2019, they filed a cross motion for summary judgment, which incorporated their June 18, 2019 memorandum of law and the accompanying exhibits and affidavits, as to the plaintiff's amended complaint. Among the affidavits submitted by the defendants were the personal affidavits of Michael Yaraghi (Michael) and Arash Yaraghi (Arash), two of the family members who own or control the defendants. On August 5, 2019, the plaintiff filed a combined memorandum of law replying to the defendants' objection to its motion for summary judgment and objecting to the defendants' cross motion for summary judgment.

On August 27, 2019, the plaintiff withdrew counts one and three of its amended complaint, which had alleged deeded easement rights to the alleyway and to a portion of the paved area, respectively. The same day, the plaintiff moved for permission to file a second amended complaint, submitted with its motion, which the court granted without objection on September 9, 2019. The sole count of the second amended complaint (operative complaint) alleged that the plaintiff had acquired in 1997 a prescriptive easement over the alleyway and a portion of the paved area leading to its parking lot (claimed easement area). As relief, the plaintiff sought (1) a declaratory judgment establishing that it has prescriptive rights to use the claimed easement area without interference from the defendants and (2) preliminary and permanent injunctions barring the defendants from interfering with its use of the claimed easement area. On September 12, 2019, the plaintiff filed a revised motion for summary judgment, which relied solely on its prior summary judgment submissions, seeking summary judgment as to the prescriptive easement claim raised in its operative complaint. On September 23, 2019, the court heard oral argument on the parties' cross motions for summary judgment.

On October 15, 2019, without seeking leave of the court, the defendants filed an answer to the plaintiff's operative complaint denying the plaintiff's material allegations. Additionally, the defendants filed amended special defenses, reasserting the original five special defenses set forth in their prior pleadings and asserting five new special defenses. The amended third, fifth, sixth, seventh, and eighth special defenses substantively tracked the original five special defenses asserted previously as to count two of the plaintiff's prior complaints. The amended first special defense alleged that the plaintiff was precluded from claiming a prescriptive easement over the claimed easement area because, in its original complaint and in its amended complaint, it had asserted deeded easement rights to the same. The amended second special defense alleged, affirmatively, that the plaintiff has a deeded easement right to a por-

tion of the paved area located behind 200 Atlantic Street and 210 Atlantic Street, thereby precluding the plaintiff from simultaneously claiming a prescriptive easement over the same. The amended fourth special defense alleged that the plaintiff used the claimed easement area with the permission of the prior owner of the defendants' properties and that such permission was revoked subsequently. The amended ninth special defense alleged that the plaintiff had used the claimed easement area with the implied permission of the defendants because, through its conduct, the plaintiff had recognized the defendants' superior claim to the claimed easement area. The amended tenth special defense alleged that the plaintiff had failed to state a claim on which relief can be granted in light of its recognition of the defendants' superior claim to the claimed easement area. On November 15, 2019, the plaintiff filed a reply denying the allegations of the amended special defenses.

On January 15, 2020, the court issued a memorandum of decision granting the plaintiff's motion for summary judgment, as revised, and denying the defendants' cross motion for summary judgment. The court concluded that "the plaintiff has established its right to summary judgment as to its claim of prescriptive easement; it has established that there is no material issue of fact and that it has used the claimed easement area in a manner that was open, visible, continuous, and uninterrupted for fifteen years and made under a claim of right." With regard to the defendants' cross motion for summary judgment, the court concluded that the defendants had failed to negate any element of the plaintiff's prescriptive easement claim.[6] As to the defendants' ten amended special defenses, the court rejected the five defenses asserted for the first time in the defendants' October 15, 2019 pleading as procedurally improper; nevertheless, the court proceeded to discuss, and reject, the merits of all ten defenses. As relief, the court (1) declared that the plaintiff had a prescriptive easement extending through the alleyway and over a portion of the paved area leading to the parking lot located behind its property,[7] and (2) enjoined the defendants from "unreasonably interfering with the use of the prescriptive easement," which included "locking access to any portion of the easement in a manner that interferes with the plaintiff's use of the easement area," although "brief closures for maintenance type activities and for construction type activities [were] presumptively permissible . . . ." This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before addressing the defendants' claims, we set forth the standard of review applicable to this appeal and relevant legal principles. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary

judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the non-moving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45].[8] . . . Our review of the trial court's decision to grant [or to deny a] motion for summary judgment is plenary." (Footnote in original; internal quotation marks omitted.) *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 835–36, 277 A.3d 200 (2022).

The plaintiff's operative complaint alleged a prescriptive easement claim pursuant to § 47-37, which provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." "The well established statutory elements necessary to establish an easement by prescription are that the use is (1) open and visible, (2) continuous and uninterrupted for fifteen years, and (3) engaged in under a claim of right." (Internal quotation marks omitted.) *Faught* v. *Edgewood Corners, Inc.*, 63 Conn. App. 164, 168, 772 A.2d 1142, cert. denied, 256 Conn. 934, 776 A.2d 1150 (2001).

I

With respect to the trial court's decision granting the plaintiff's motion for summary judgment, the defendants claim that the court (1) lacked the authority to grant the plaintiff's motion because, in moving for summary judgment, the plaintiff failed to address their special defenses, and (2) improperly determined that no genuine issues of material fact exist vis-à-vis the plaintiff's prescriptive easement claim. We agree in part with the defendants' first claim that the court lacked the authority to render summary judgment in the plaintiff's favor, and, therefore, the court's decision granting the plaintiff's motion for summary judgment must be

reversed and the case must be remanded for further proceedings. Although our resolution of the defendants' first claim is dispositive of the portion of the appeal taken from the summary judgment rendered in the plaintiff's favor, because it is sufficiently likely to arise on remand, we will also address the defendants' second claim. See *Budlong & Budlong, LLC* v. *Zakko*, 213 Conn. App. 697, 714 n.14, 278 A.3d 1122 (2022) ("[a]lthough our resolution of the defendant's first claim is dispositive of this appeal, we also address the defendant's second claim because it is likely to arise on remand").

A

The defendants claim that the court lacked the authority to grant the plaintiff's motion for summary judgment because, in moving for summary judgment, the plaintiff did not address their special defenses. For the reasons that follow, we agree in part with the defendants.

The following additional procedural history is relevant to our resolution of this claim. By the time that the court heard oral argument on the parties' cross motions for summary judgment on September 23, 2019, the defendants had asserted the following five special defenses directed to the prescriptive easement claim set forth in the plaintiff's operative complaint: (1) failure to state a claim on which relief can be granted on the basis of the public's use of the alleyway; see part I B 2 b of this opinion; (2) waiver; (3) estoppel; (4) unclean hands; and (5) laches (original special defenses). In its memorandum of law in support of its motion for summary judgment, the plaintiff argued that the original special defense asserting failure to state a claim was meritless; however, the plaintiff did not address the four other special defenses.

On October 15, 2019, approximately three weeks following oral argument, the defendants filed an answer accompanied by amended special defenses directed to the plaintiff's operative complaint (October 15, 2019 pleading). In addition to reasserting the five original special defenses, the defendants asserted five new special defenses, which we summarized previously in this opinion (new special defenses). The defendants did not seek leave of the court to file the October 15, 2019 pleading.

In granting the plaintiff's motion for summary judgment, the court discussed the ten amended special defenses asserted in the October 15, 2019 pleading. At the outset, the court determined that the October 15, 2019 pleading was procedurally improper because the defendants had failed either (1) to comply with Practice Book § 10-61[9] by filing it within ten days after the plaintiff had filed its operative complaint or (2) to seek permission to file it pursuant to Practice Book § 10-60.[10] Additionally, insofar as the defendants had asserted

the five new special defenses, the court noted that the defenses were raised after the court had heard oral argument on the parties' cross motions for summary judgment, such that "the parties did not brief the issues in the [new] special defenses . . . did not have an opportunity to submit evidence relating to the new [special defenses] (or identify 'old' evidence already before the court that would be relevant), and did not have an opportunity to argue the issues presented by the new special defenses." The court further noted that, although the plaintiff had filed a reply denying the allegations of the amended special defenses, it had not consented in advance to the amendment and had no opportunity to address the new special defenses in its summary judgment submissions. The court continued: "Under these unique if not bizarre circumstances, the court believes it appropriate to reject the new special defenses that were added as a matter of fundamental fairness."[11] Notwithstanding its rejection of the new special defenses as procedurally defective, the court discussed, and rejected, the merits of all ten defenses.

On appeal, relying chiefly on *Nationstar Mortgage, LLC* v. *Mollo*, 180 Conn. App. 782, 185 A.3d 643 (2018), the defendants claim that the court lacked the authority to grant the plaintiff's motion for summary judgment because, in moving for summary judgment, the plaintiff failed to address their special defenses either by (1) challenging the legal sufficiency of the defenses or (2) submitting competent evidence to demonstrate that no genuine issues of material fact exist vis-à-vis the defenses. The defendants further contend that, insofar as the court rejected the merits of their special defenses, the court committed error by considering the defenses sua sponte, that is, without the plaintiff having addressed them in its summary judgment submissions. We agree with the defendants only with regard to the four original special defenses asserting waiver, estoppel, unclean hands, and laches.

In *Mollo*, which involved an appeal taken from a judgment of strict foreclosure, the dispositive issue was whether the trial court lacked the authority to grant the plaintiff's motion for summary judgment as to liability only on the ground that, in moving for summary judgment, the plaintiff had failed either to attack the legal sufficiency of the defendant's special defenses or to submit competent evidence establishing that there were no genuine issues of material fact with regard to the defenses. Id., 784. In its operative motion for summary judgment and supporting memorandum of law, the plaintiff asserted that there were no genuine issues of material fact with respect to the allegations of its complaint. Id., 786. The motion for summary judgment appeared on the short calendar of March 14, 2016, for argument. Id., 787. Three days prior to the short calendar hearing, on March 11, 2016, the defendant filed (1) an answer, in which he denied that the plaintiff was

entitled to any relief or that the plaintiff could establish that it was entitled to the equitable remedy of foreclosure, (2) special defenses asserting unclean hands, fraudulent inducement, and equitable estoppel, (3) a counterclaim, and (4) an objection to the motion for summary judgment, which was untimely pursuant to Practice Book (2016) § 17-45. Id., 787–88. In his objection to the plaintiff's motion for summary judgment, the defendant argued that his special defenses were legally sufficient and there were genuine issues of material fact relating thereto. Id., 788. At the short calendar hearing, the court overruled the defendant's objection and granted the plaintiff's motion for summary judgment.[12] Id., 789. In doing so, "[t]he court made only passing references to the defendant's special defenses . . . . The court indicated that it did not 'see anything wrong in the making of [the promissory note at issue] except that [the defendant] made a bad bargain.' " Id., 789–90. The court subsequently rendered a judgment of strict foreclosure, from which the defendant appealed. Id., 790.

On appeal, this court observed that rendering summary judgment as to liability only in the plaintiff's favor would have been proper "if the complaint and supporting affidavits had established an undisputed prima facie case and the defendant had failed to assert any legally sufficient special defense." Id., 793. This court then concluded that "the [trial] court lacked authority to render summary judgment as to liability in favor of the plaintiff with respect to the factual or legal viability of the defendant's special defenses because the issues relating to the special defenses remained outside the scope of the plaintiff's motion for summary judgment." Id., 796. This court recognized that, as a consequence of the defendant's "last-minute filing," the plaintiff had not addressed the defendant's special defenses in its summary judgment submissions. Id., 797. Nevertheless, in light of the defendant's special defenses, this court determined that the plaintiff should have marked off argument on the motion for summary judgment so as to permit it to file "a new pleading addressing the special defenses with an accompanying brief and/or competent evidence sufficient to establish their legal insufficiency or that no genuine issue of material fact exists."[13] Id., 798. As summarized by this court, "on the basis of the facts of [the] case . . . the [trial] court acted in excess of its authority when it raised and considered, sua sponte, grounds for summary judgment not raised or briefed by the plaintiff." Id.; see also id., 790 n.11 ("[w]e disagree with the plaintiff's position that, despite the fact that its . . . motion for summary judgment did not address the defendant's special defenses, the court had the authority to [decide] whether the defendant sufficiently [pleaded] his special defenses . . . and whether any deficiency could not be cured by repleading" (internal quotation marks omitted)). Accordingly,

this court reversed the judgment rendered in favor of the plaintiff and remanded the case for further proceedings according to law. Id., 798.

Applying the rationale of *Mollo* to this appeal,[14] we conclude that, to invoke the trial court's authority to grant the plaintiff's motion for summary judgment, the plaintiff was obligated to address any special defenses to its operative complaint that the defendants had asserted properly in accordance with our rules of practice. The only special defenses meeting this requirement were the five original special defenses, those being (1) failure to state a claim on which relief can be granted on the basis of the public's use of the alleyway, (2) waiver, (3) estoppel, (4) unclean hands, and (5) laches. In its memorandum of law supporting its motion for summary judgment, the plaintiff expressly addressed the original special defense sounding in failure to state a claim; however, the plaintiff's summary judgment submissions were silent as to the other four defenses. Accordingly, the court improperly adjudicated, sua sponte, the four original special defenses asserting waiver, estoppel, unclean hands, and laches, such that the court committed error in granting the plaintiff's motion for summary judgment.[15]

We reach a different conclusion, however, with respect to the five new special defenses that the defendants asserted in the October 15, 2019 pleading. The court rejected the new special defenses on, inter alia, procedural grounds because the defendants had filed them approximately three weeks after oral argument on the parties' cross motions for summary judgment, well beyond the filing period prescribed by Practice Book § 10-61, and without the court's permission. In other words, the new special defenses were not properly before the court, thereby absolving the plaintiff of any obligation to address them in order to invoke the court's authority vis-à-vis its motion for summary judgment.[16]

In sum, because the plaintiff did not address the defendants' four original special defenses asserting waiver, estoppel, unclean hands, and laches in its summary judgment submissions, we conclude that the plaintiff failed to invoke the court's authority to grant its motion for summary judgment and that the court improperly addressed these defenses sua sponte. Accordingly, we conclude that the court improperly granted the plaintiff's motion for summary judgment.[17]

B

The defendants also claim that the court improperly determined that there are no genuine issues of material fact as to the plaintiff's prescriptive easement claim. There are two subsets to this claim. First, the defendants assert that the court committed error in "disregard[ing]" a portion of the personal affidavit of Michael

(Michael affidavit) that they filed as part of their summary judgment submissions. Second, the defendants contend that, even if the court properly "disregarded" the relevant portion of the Michael affidavit, there are genuine issues of material fact as to whether (1) the plaintiff's use of the alleyway was under a claim of right, and (2) the plaintiff's use and the public's use of the alleyway were indistinguishable. These contentions are unavailing.

Before continuing with the merits of each of these contentions, we first highlight that the court did not disregard, or ignore, a portion of the Michael affidavit. To the contrary, the court expressly considered it. As we set forth in more detail in part I B 1 of this opinion, the court explained that it rejected any evidentiary value of Michael's statement as to frequency of use because it was conclusory rather than factual and that, as a result of the lack of foundation, Michael's opinion as to frequency of use did not constitute competent evidence for purposes of Practice Book § 17-46. Thus, mindful of the court's actual treatment of the Michael affidavit, we consider the defendants' contentions.

1

The defendants argue that the court erred in rejecting a portion of the Michael affidavit on the basis that it did not constitute competent evidence pursuant to Practice Book § 17-46.[18] We disagree.

Practice Book § 17-46 provides in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." Section 17-46 "sets forth three requirements necessary to permit the consideration of material contained in affidavits submitted in a summary judgment proceeding. The material must: (1) be based on 'personal knowledge'; (2) constitute facts that would be admissible at trial; and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit." *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 251, 654 A.2d 748 (1995). "Affidavits that fail to meet the criteria of . . . § 17-46 are defective and may not be considered to support the judgment. Defects in affidavits include such things as assertions of facts or conclusory statements." *U.S. Bank Trust, N.A.* v. *Dallas*, Superior Court, judicial district of Litchfield, Docket No. CV-16-6013346-S (May 24, 2021) (reprinted at 213 Conn. App. 487, 491, 278 A.3d 1141), aff'd, 213 Conn. App. 483, 278 A.3d 1138 (2022); see also *Stuart* v. *Freiberg*, 316 Conn. 809, 828, 116 A.3d 1195 (2015) (averments in affidavit that are conclusory are "inadequate to defeat a summary judgment motion"); *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000) ("[a] conclusory assertion . . . does not constitute evidence sufficient to establish

the existence of a disputed material fact for purposes of a motion for summary judgment"); Black's Law Dictionary (8th Ed. 2004) p. 308 (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"). The question before us is whether the court properly rejected the relevant portion of the Michael affidavit on the basis that the averments contained therein were conclusory.

The following additional procedural history is relevant to our disposition of this claim. In support of the plaintiff's motion for summary judgment, the plaintiff submitted personal affidavits of Silver, Golub, and Blauner. Silver and Golub averred that they had been members of the plaintiff since 1982 and were partners at a law firm now known as Silver Golub & Teitell LLP (SGT), which moved its offices into the plaintiff's property in 1982. Silver and Golub further averred, individually or collectively, that, between 1982 and 2014, (1) they used the claimed easement area to access the plaintiff's parking lot "on a daily basis," and (2) the claimed easement area was used "on a daily basis" by (a) the plaintiff's members and employees, (b) SGT's personnel, business invitees, family, and friends, and (c) the plaintiff's other tenants and their invitees. Blauner averred that, since 1990, he has been employed either by the plaintiff or by SGT and that, during his years of employment prior to 2015, (1) he used the claimed easement area "regularly and routinely" to access the plaintiff's parking lot and (2) other SGT personnel utilized the claimed easement area "on a regular daily basis . . . ."

In opposing the plaintiff's motion for summary judgment, the defendants submitted, inter alia, the Michael affidavit. Michael averred that, beginning in June, 1988, he was "primarily responsible for the day-to-day management of . . . Safavieh Atlantic, LLC," and that he was present at the 234 Atlantic Street and 252 Atlantic Street properties "almost daily until the early 2000s," after which he "frequently visited" the properties, "although not on a daily basis."[19] Michael further averred that, "during [his] time on the [d]efendants' propert[ies], [he] saw [Silver and Blauner] use the [a]lleyway to access [the plaintiff's property] only a couple of times," that "[a]t some point, [the defendants] learned that . . . Silver would use the [a]lleyway from time to time and that . . . Blauner would use the [a]lleyway on occasion to access [the] [p]laintiff's parking lot," and that he "[did] not know of any additional or unique use of the [a]lleyway by [the] [p]laintiff." Moreover, Michael averred that (1) other than with respect to Silver and Blauner, he did not know what vehicles the plaintiff's owners, employees, clients, or tenants drove, and (2) there are no windows in the defendants' buildings that overlook the alleyway.

In granting the plaintiff's motion for summary judgment, the court determined that Michael's averments regarding the frequency with which the plaintiff, through its representatives, used the alleyway did not constitute competent evidence pursuant to Practice Book § 17-46 because they were "conclusory rather than factual, absent any indication of regularity and frequency of observations." The court further explained: "An assertion that the principals of the defendants—chiefly Michael—have seen only occasional (rare) use of the claimed easement[20] by principals of the plaintiff is intended to suggest, without explicitly stating, that the usage is sporadic. Stating that an observer has only seen an event infrequently does not, without more (e.g., some sense of frequency and intensity of observation), support a reasonable inference that the event occurs only infrequently.

"From a different perspective, this is a variation of the difficulties in proving a negative—this is an attempt to prove an almost negative. Merely stating only occasional observations of the plaintiff's principals or staff using the claimed easement area does not, without more, imply negation of regular use. Absent some level of monitoring of use of the alleyway and rear of the defendants' buildings, or some equivalent ability to assert some absolute quality to the 'occasional-ness' of the observations, the statement of only occasional observations is essentially anecdotal rather than factual in a general sense. It may be rare to see a neighbor from the far end of the street drive past one's residence, but that would not support a reasonable inference that that neighbor only rarely or sporadically does drive on the street—except perhaps if accompanied by a statement that the observer regularly spends the day in a chair facing and observing the street. There is nothing in the record suggesting much less establishing that the defendants' principals spend extensive periods of time watching persons driving through the alleyway and into the [paved] area behind their buildings. Indeed, [Michael and Arash] testified that there are no windows on the sides of the buildings providing a direct view of the alleyway, and that there are no windows in the rears of the buildings, such that observations would only be made at times they were physically outside and presumably to the rear of the buildings (since there would not seem to be much reason to stand in the alleyway). Without more, it would be unreasonable to infer that someone working in a commercial enterprise with no windows facing in the relevant directions can characterize the frequency of use of blocked from view passageways by specific drivers of vehicles.

"Additionally, [Silver and Blauner] are only a small percentage of the class of claimed users—other employees of the law firms with offices in the plaintiff's building and their clients and invitees. And, almost trivially, per-

sons going to the plaintiff's building early in the morning, before the defendants' principals arrive, would be unseen. The defendants indicated very limited familiarity with the plaintiff's personnel—apparently knowing/recognizing only [Silver and Blauner] . . . . Therefore, they would have no way of knowing whether someone seen driving over the claimed easement area was a client or employee or otherwise an invitee to the plaintiff's premises unless they made a conscious effort to watch the person so as to determine the eventual destination."[21] (Emphasis omitted; footnoted added.) In sum, the court concluded that, "[a]bsent a foundation, a statement as to frequency of use (and, especially, [one that is] limited to only two of the people who worked in the building, and ignoring the unknown drivers [Michael] might have seen heading to the plaintiff's building as actual or potential clients) is no better than conclusory if not speculative. Absent a foundation, statements as to claimed frequency of use must be rejected pursuant to Practice Book § 17-46."

The defendants maintain that the court improperly rejected Michael's averments regarding the frequency of the plaintiff's use of the alleyway. They argue that, in light of the evidence reflecting that Michael was present at 234 Atlantic Street and 252 Atlantic Street almost daily between 1988 and the early 2000s and charged with managing the premises, there is a "logical inference that [he] was not only inside of the premises during his work week, [but that] in order to maintain the propert[ies], he necessarily was frequently and regularly outside and about the grounds of the propert[ies], on the sidewalk in front of the propert[ies], in the alleyway, and outside in the parking lot and the rear of the defendants' properties," such that, "on a daily basis, he was capable of and in fact made frequent observations as to the vehicular traffic moving through the alleyway and towards the rear of the building[s]." The defendants also contend that Blauner's affidavit buttresses their position, as Blauner averred that, while he was driving to and from the plaintiff's parking lot, he "often" saw Michael.[22] We are not persuaded.

First, we do not agree that Michael's averments logically infer that he was "frequently and regularly outside" observing vehicles traversing the alleyway. Although Michael's regular presence on the premises in his role as the day-to-day manager of the defendants' business may infer that he witnessed *some* vehicular traffic around the defendants' properties, we are not convinced that it follows, without more specific averments, that he was making "frequent observations" daily as proposed by the defendants. Additionally, we do not consider Blauner's averment that he "often" encountered Michael while driving to and from the plaintiff's parking lot as providing a sufficient foundation to render Michael's averments as to the plaintiff's frequency of use competent under Practice Book § 17-46.

Second, assuming arguendo that the record demonstrates that Michael was making "frequent observations" of vehicular traffic on a daily basis, the defendants cannot overcome the other flaw recognized by the court, namely, that Michael's averments focused only on two individuals associated with the plaintiff, Silver and Blauner. Michael did not aver that he witnessed Golub or others with connections to the plaintiff utilize the alleyway infrequently; rather, he averred that he "[did] not know of any additional or unique use of the [a]lleyway by [the] [p]laintiff." Moreover, Michael averred that, although he recognized the vehicles driven by Silver and Blauner, he did not know which vehicles the plaintiff's other owners, employees, clients, or tenants drove. Given his limited familiarity with the plaintiff, Michael's averments as to the plaintiff's frequency of use did not constitute competent evidence under Practice Book § 17-46.

In sum, we conclude that the court properly rejected the relevant portion of the Michael affidavit pursuant to Practice Book § 17-46.

2

The defendants next assert that, even if the court properly rejected the relevant portion of the Michael affidavit, there are genuine issues of material fact regarding whether the plaintiff's use of the alleyway was (1) under a claim of right, and (2) indistinguishable from the public's use of the same.[23] We disagree.

a

The defendants contend that the court improperly determined that there are no genuine issues of material fact as to whether the plaintiff's use of the alleyway was under a claim of right.[24] We are not persuaded.

"Use made under a claim of right means use that is made without recognition of the rights of the owner of the servient tenement. . . . To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised. . . . The use must occur without license or permission and must be unaccompanied by any recognition of [the right of the owner of the servient tenement] to stop such use. . . .

"The claim of right requirement serves to ensure that permissive uses will not ripen into easements by prescription by requiring that the disputed use be adverse to the rights of the owner of the servient tenement. . . . Nevertheless, it is not necessary in order that a use be adverse that it be made either in the belief or under a claim that it is legally justified. . . . Instead, the essential quality is that the use not be made in subordination to those against whom it is claimed to be adverse." (Citations omitted; internal quotation marks

omitted.) *Crandall* v. *Gould*, 244 Conn. 583, 590–91, 711 A.2d 682 (1998).

"The requirement that the [use] must be exercised under a claim of right does not necessitate proof of a claim actually made and brought to the attention of the owner . . . . It means nothing more than a [use] as of right, that is, without recognition of the right of the landowner, and that phraseology more accurately describes it than to say that it must be under a claim of right." (Internal quotation marks omitted.) *Cirinna* v. *Kosciuszkiewicz*, 139 Conn. App. 813, 822, 57 A.3d 837 (2012); see also *Wadsworth* v. *Zahariades*, 1 Conn. App. 373, 376, 472 A.2d 29 (1984) ("[t]he term 'under a claim of right' denotes a user who does not recognize the rights of an owner of a servient estate"). "[When] there is no proof of an express permission from the owner of the servient estate, on the one hand, or of an express claim of right by the person or persons using the way, on the other, the character of the [use], whether adverse or permissive, can be determined as an inference from the circumstances of the parties and the nature of the [use]." (Internal quotation marks omitted.) *Cirinna* v. *Kosciuszkiewicz*, supra, 822.

It is well established that a "[u]se by express or implied permission or license cannot ripen into an easement by prescription." (Internal quotation marks omitted.) *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 705, 829 A.2d 8 (2003). "There is a distinction made in our case law between the terms 'permission' and 'acquiescence' in the context of a prescriptive easement claim. On this point, the following excerpt from *Phillips* v. *Bonadies*, [105 Conn. 722, 726, 136 A. 684 (1927)] is particularly illuminating: 'In the very nature of [prescriptive easement] case[s] . . . every such user is by permission of the owner of the servient tenement in the sense that he permits it to continue without exercising his right to terminate it. A permissive user therefore as distinguished from one exercised under a claim of right is not to be inferred from mere passive acquiescence. The facts and circumstances must be such as to warrant the inference of a license exercised in subordination to the rights of the owner of the soil and which he may revoke at any time.' . . . As the *Phillips* court admonished, permissive use should not be confused with 'passive acquiescence.' The two terms have vastly different impacts. If there is permission granted to use the contested property, then the user of the land is acting in subordination to the ownership rights of the servient landowner, and the claim of prescriptive easement arising out of his use is negated. In contrast, passive acquiescence does not indicate such subordination and permits the finding of a prescriptive easement. Id. For this reason, *Phillips* emphasized the importance of an indication of subordinate conduct in determining whether there was permissive or acquiescent conduct." (Emphasis omitted.) *Gallo-Mure* v. *Tomchik*, supra,

707–708.

The following additional procedural history is relevant to our resolution of this claim. In support of the plaintiff's motion for summary judgment, Silver and Golub averred, individually or collectively, in relevant part as follows. In 1982, the plaintiff purchased 184 Atlantic Street by way of a warranty deed recorded on the Stamford land records. Prior to purchasing 184 Atlantic Street, the plaintiff was told by the prior owner that whoever owned 184 Atlantic Street also possessed deeded easement rights to use the claimed easement area to access the property's parking lot. After acquiring 184 Atlantic Street in 1982, and with the understanding that they had deeded easement rights to do so, Silver, Golub, and the plaintiff's other members used the claimed easement area to access the plaintiff's parking lot. Additionally, for more than thirty years thereafter and without seeking or receiving permission from the defendants, the plaintiff's members, employees, business invitees, tenants, and invitees of its tenants used the claimed easement area to access the plaintiff's parking lot. The plaintiff relied on this evidence to claim that there was no genuine issue of material fact that it had used the claimed easement area under a claim of right.

In support of the defendants' objection to the plaintiff's motion for summary judgment, Michael and Arash averred, individually or collectively, in relevant part as follows. During renovations performed on 234 Atlantic Street in 1988 and on 252 Atlantic Street in 1994, which occurred immediately after each property had been purchased, the defendants blocked the alleyway on several occasions for periods ranging from one day to one week. In addition, the defendants closed the alleyway periodically to perform maintenance and repaving. The plaintiff never objected to or inquired as to the alleyway's closures. This evidence, the defendants argued, raised a genuine issue of material fact as to whether the plaintiff's use was under a claim of right because it indicated that the plaintiff had recognized their superior right to the alleyway.

In addition, the defendants argued that there was a genuine issue of material fact as to the claim of right requirement in light of evidence indicating that they gave implied permission to the plaintiff to use the alleyway as a neighborly accommodation. In support of this argument, the defendants relied on affidavits and deposition testimony indicating that, inter alia, (1) Michael and Arash were aware of, and did not object to, the plaintiff's use of the alleyway, (2) Blauner exchanged pleasantries with Michael, (3) the plaintiff often allowed the defendants to use its parking lot during weekends, and (4) the defendants permitted the plaintiff to use parking spots located behind 200 Atlantic Street and 210 Atlantic Street.

In granting the plaintiff's motion for summary judgment, the court concluded that there were no genuine issues of material fact that the plaintiff had used the claimed easement area under a claim of right. The court determined that, irrespective of whether the plaintiff owned valid deeded easement rights to the claimed easement area, there was no genuine issue of material fact that the plaintiff believed that it owned such rights. Additionally, the court rejected the defendants' arguments that the evidence indicated that (1) the plaintiff had recognized their superior right vis-à-vis the alleyway and (2) they had given the plaintiff implicit permission to use the alleyway as a neighborly accommodation.

On appeal, the defendants assert that there are genuine issues of material fact as to whether the plaintiff used the alleyway under a claim of right in light of the evidence demonstrating that they occasionally closed the alleyway during the prescriptive period, thereby restricting the plaintiff's access to the alleyway, without objection or inquiry from the plaintiff. The defendants maintain that the plaintiff's inaction following the alleyway's closures indicated that the plaintiff acknowledged their superior right to the alleyway. We disagree with the supposition that the plaintiff's failure to respond to the alleyway's closures, which were intermittent, implies that the plaintiff recognized the defendants' ability to stop the plaintiff's use. See, e.g., *Frech* v. *Piontkowski*, 296 Conn. 43, 59, 994 A.2d 84 (2010) (rejecting defendants' claim that there was insufficient evidence adduced at trial supporting trial court's determination that plaintiffs used defendants' reservoir under claim of right when evidence demonstrated, inter alia, that plaintiffs did not respond to defendants' "intermittent attempts" to prevent plaintiffs' use of reservoir). Given that "[p]rescriptive easements, unlike title gained by adverse possession, do not require exclusive use by the claimant"; *Gallo-Mure* v. *Tomchik*, supra, 78 Conn. App. 706 n.4; we cannot conclude that the defendants' sporadic, temporary closures of the alleyway to perform maintenance and repairs, even to the sole benefit of the defendants, operated to undermine the plaintiff's claim of right, particularly when the record, viewed in the light most favorable to the defendants, reflects that the plaintiff resumed use of the alleyway when it reopened and the closures prevented all users, not only the plaintiff, from traveling across the alleyway.

The defendants also claim that there are genuine issues of material fact because of evidence indicating that they had granted the plaintiff implied permission to use the alleyway as a neighborly accommodation. The defendants cite evidence reflecting that they did not object to the plaintiff's known use of the alleyway, that the parties were friendly with one another, and that the parties shared parking spaces under certain

circumstances. None of this evidence creates genuine issues of material fact. A landowner's mere failure to object to a claimant's use, notwithstanding knowledge of the claimant's use, does not signify implied permission. See id., 707–708 (discussing difference between permission and passive acquiescence). Moreover, we deem it far too speculative to infer implied permission from evidence indicating that the parties had a friendly relationship and shared parking spaces at times, which are wholly disconnected from the plaintiff's use of the alleyway.[25]

In sum, we conclude that the court did not err in concluding that there were no genuine issues of material fact that the plaintiff's use of the alleyway was under a claim of right.[26]

b

The defendants also assert that the court improperly determined that there are no genuine issues of material fact as to whether the plaintiff's use and the public's use of the alleyway were indistinguishable. We reject this claim.

"Where the use of a right-of-way is in common with the public, the common use is considered to negate a presumption of grant to any individual use. In such a case, the individual user must, in order to establish an independent prescriptive right, perform some act of which the servient owner is aware and which clearly indicates his individual claim of right. . . . A finding that the use made by the claimant and his predecessors in title was not different from that made by the general public is fatal to the establishment of any prescriptive right in the claimant." (Citation omitted; internal quotation marks omitted.) *Gioielli* v. *Mallard Cove Condominium Assn., Inc.*, 37 Conn. App. 822, 829–30, 658 A.2d 134 (1995).

The following additional procedural history is relevant to our disposition of this claim. In its memorandum of law in support of its motion for summary judgment, acknowledging that the defendants had raised the "public use" doctrine as a special defense, the plaintiff argued that there was no genuine issue of material fact that its use of the claimed easement area was distinguishable from the public's use because, unlike the plaintiff, the public never used the entirety of the claimed easement area for the purpose of reaching the plaintiff's parking lot.

In support of the defendants' objection to the plaintiff's motion for summary judgment, Arash and Michael averred that, following the purchase of 234 Atlantic Street in 1988, they observed members of the general public use the alleyway (1) to access parking spaces located in a portion of the paved area behind 200 Atlantic Street and 210 Atlantic Street, some of whom would then walk to patronize businesses fronting on Atlantic

Street, or (2) as a shortcut to reach a nearby mall via the driveway providing ingress and egress to the paved area. They further averred that they did not observe the plaintiff use the alleyway in any "distinct" manner relative to the general public. The defendants relied on this evidence to argue that there were genuine issues of material fact as to whether the plaintiff's use of the alleyway was indistinguishable from the public's use.

In granting the plaintiff's motion for summary judgment, the court determined that there were no genuine issues of material fact that the plaintiff's use of the alleyway *and* the paved area, collectively, was distinguishable from the public's use of the same. The court reasoned that, although there was a partial overlap in the routes used by the plaintiff and the public to traverse the alleyway and the paved area, there was a segment of the paved area adjacent to the plaintiff's parking lot that the public did not utilize, which was sufficient to distinguish the plaintiff's use of the alleyway *and* the paved area from that of the public's.[27]

On appeal, the defendants do not contest the court's determination that the plaintiff used a portion of the paved area that the public did not, which was the foundation of the court's conclusion that there was no genuine issue of material fact that the plaintiff's use of the alleyway *and* the paved area was distinguishable from the public's use. Instead, the defendants contend that the court committed error by failing to compare the plaintiff's use and the public's use of the alleyway only, without considering the manner in which the paved area was utilized. The defendants iterate their position that the plaintiff owns a deeded easement right to a portion of the paved area and, as such, the plaintiff cannot establish a prescriptive easement over the same. See footnote 23 of this opinion. Consequently, the defendants posit, any usage of the paved area is irrelevant to the issue of whether a prescriptive easement exists as to the alleyway. The defendants further contend that, when the issue is properly framed, there are genuine issues of material fact as to whether the plaintiff's use and the public's use of the alleyway were indistinguishable.

The defendants' claim merits only a brief discussion. In its operative complaint, the plaintiff alleged that it had acquired a prescriptive easement over both the alleyway *and* a portion of the paved area for the purpose of accessing its parking lot from Atlantic Street, and the plaintiff's revised motion for summary judgment sought summary judgment as to that claim. At no point prior to asserting their amended second special defense in the October 15, 2019 pleading did the defendants claim that the plaintiff has a deeded easement right to a portion of the paved area,[28] and the court deemed that defense to be procedurally improper.[29] Thus, the court conducted the correct analysis in comparing the

uses by the plaintiff and the public of the alleyway *and* the paved area collectively, and, therefore, we reject the defendants' claim.

II

In addition to challenging the trial court's decision granting the plaintiff's motion for summary judgment, the defendants claim that the court improperly denied their cross motion for summary judgment. The limited basis of this claim is that, as a matter of law, the plaintiff is precluded from asserting both deeded and prescriptive easement rights, and, therefore, the defendants are entitled to summary judgment. We reject this claim.

The following additional procedural history is relevant here. After withdrawing counts one and three of its amended complaint, which alleged deeded easement rights to the alleyway and a portion of the paved area, respectively, the plaintiff filed its operative, one count complaint alleging a prescriptive easement right to the claimed easement area. The operative complaint set forth certain allegations referencing deeded rights vis-à-vis the claimed easement area. Paragraph 7 alleged that the prior owner of 184 Atlantic Street informed the plaintiff "that 184 Atlantic [Street] had deeded rights of access to Atlantic Street over the [claimed easement area]." Paragraphs 8 and 9 alleged that the deeds of prior owners of 184 Atlantic Street contained "easements authorizing [the] use of the [claimed easement area] . . . ." Paragraph 25 alleged: "The plaintiff's original warranty deed from [the prior owner of 184 Atlantic Street] inadvertently failed to properly reflect the plaintiff's right to use the [claimed easement area] to travel between Atlantic Street and the 184 Atlantic [Street] parking lot. Although the inadvertent error in the deed was corrected by a subsequent deed from [the prior owner of 184 Atlantic Street] recorded on the Stamford land records in 2015, the defendants take the position that the easement rights provided in the plaintiff's 2015 (corrected) deed are invalid and that the plaintiff has no deeded right to use the [claimed easement area]."

During oral argument on the parties' cross motions for summary judgment, for the first time, the defendants argued that the plaintiff's prescriptive easement claim was untenable in light of the allegations in paragraphs 7, 8, 9, and 25 of its operative complaint, which, according to the defendants, indicated that the plaintiff was alleging deeded easement rights. The defendants maintained that the plaintiff could not assert both prescriptive and deeded easement rights, as the deeded easement right would negate the adversity element of a prescriptive easement claim. In response, the plaintiff argued that the purpose of paragraphs 7, 8, 9, and 25 of the operative complaint was to set forth "the belief of [the plaintiff] that [it] had rights to use [the claimed easement area] and that [such use] was adverse to the other property owner[s] and that [the plaintiff] didn't

need permission [and] never asked for permission." The plaintiff further iterated that it "[chose] to proceed solely on the prescriptive easement matter here."

On the record, the court questioned whether the plaintiff was asserting deeded easement rights, observing that the plaintiff had withdrawn and abandoned counts one and three of its prior complaints. The court further construed the allegations in the operative complaint referencing deeded easement rights as indicating that (1) the plaintiff held a belief that it had deeded easement rights to the claimed easement area and (2) there is a dispute as to whether such deeded easement rights exist, such that the plaintiff decided not to pursue a claim seeking to establish deeded easement rights. Additionally, the court rejected, as speculative, an argument raised by the defendants that the plaintiff could seek to resurrect its deeded easement claims if its prescriptive easement claim failed.

Approximately three weeks following argument on the parties' cross motions for summary judgment, the defendants filed the October 15, 2019 pleading directed to the plaintiff's operative complaint. In their amended first special defense, the defendants alleged that the plaintiff's prescriptive easement claim failed because, in its original complaint and in its amended complaint, the plaintiff affirmatively alleged that it had deeded easement rights to the claimed easement area.

In granting the plaintiff's motion for summary judgment, the court rejected the October 15, 2019 pleading, including the defendants' amended first special defense, as procedurally improper. See part I A of this opinion. In further discussing the amended first special defense, the court determined that (1) the plaintiff was not prohibited from pleading both prescriptive and deeded easement rights as alternative theories, and (2) the plaintiff had abandoned its deeded easement claims, instead pursuing its prescriptive easement claim only, such that the existence of deeded easement rights was no longer an issue before the court and the "historical existence of past claims of deeded easement rights is not a defense to the prescriptive easement claim before the court."

On appeal, the defendants assert that, as a matter of law, the plaintiff cannot seek to establish both deeded and prescriptive easements, and, therefore, they are entitled to summary judgment vis-à-vis their cross motion for summary judgment.[30] This claim is untenable for two reasons.

First, this issue was not properly raised before the trial court. Nowhere in their summary judgment submissions did the defendants assert that they were entitled to summary judgment on this ground. The defendants presented this issue for the first time during oral argument on the parties' cross motions for summary judg-

ment, and they later raised it in their October 15, 2019 pleading by way of their amended first special defense, which the court deemed to be procedurally improper. The defendants do not challenge on appeal the court's rejection of this claim on procedural grounds, and, thus, we need not reach the merits of this claim.

Second, assuming arguendo that the defendants properly raised this claim before the trial court, the claim fails because the plaintiff abandoned its deeded easement claims by withdrawing counts one and three of its amended complaint and, thereafter, by filing its operative complaint alleging a prescriptive easement over the claimed easement area. Whether the plaintiff previously had alleged deeded easement rights is of no moment.[31] Moreover, insofar as the operative complaint contained allegations referencing deeded easements, we construe those allegations as (1) evincing a belief by the plaintiff that it possessed deeded easement rights during the prescriptive period, which was germane to the claim of right element of the plaintiff's prescriptive easement claim, and (2) recognizing that there is a dispute as to whether the plaintiff owns deeded rights, such that the plaintiff was abandoning its pursuit of its deeded easement claims in favor of a prescriptive easement claim. Thus, after it had filed its operative complaint, the plaintiff was not alleging both deeded and prescriptive easement rights simultaneously.

In sum, we reject the defendants' claim that the court improperly denied their cross motion for summary judgment.

The judgment is reversed only as to the decision granting the plaintiff's motion for summary judgment and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] "The denial of a motion for summary judgment is ordinarily not an appealable final judgment; however, if parties file cross motions for summary judgment and the court grants one and denies the other, this court has jurisdiction to consider both rulings on appeal. See *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 132 Conn. App. 629, 630 n.2, 33 A.3d 783 (2011), [aff'd, 308 Conn. 146, 61 A.3d 485 (2013)]." *Hannaford* v. *Mann*, 134 Conn. App. 265, 267 n.2, 38 A.3d 1239, cert. denied, 304 Conn. 929, 42 A.3d 391 (2012).

[2] For ease of discussion, we address the defendants' claims in a different order than they are presented in the defendants' principal appellate brief.

[3] We note that there is evidence in the record suggesting that 210 Atlantic Street was purchased sometime between 2005 and 2007. In their respective summary judgment submissions filed in this matter, however, the parties appeared to agree that the defendants acquired 210 Atlantic Street in 2014. Thus, we consider it to be undisputed that 210 Atlantic Street was acquired in 2014.

[4] The parties do not appear to dispute that, in addition to the alleyway, there is a driveway that provides ingress to and egress from the paved area, although that driveway does not connect directly to Atlantic Street.

[5] The second, third, fourth, and fifth special defenses were identical with respect to all three counts of the plaintiff's original complaint. The first special defense set forth distinct allegations as to each count.

[6] The court also determined that, insofar as the defendants had moved for summary judgment on the first and third counts of the plaintiff's amended

complaint, which had been withdrawn, the defendants' cross motion for summary judgment was moot.

[7] Specifically, the court ruled that the plaintiff had a prescriptive easement over (1) the full width of the entire alleyway and (2) a ten foot path in the portion of the paved area behind 210 Atlantic Street and 234 Atlantic Street that continued through the portion of the paved area behind 200 Atlantic Street, excluding a segment that had been used for parking, and up to the boundary of the plaintiff's property.

[8] "Practice Book § 17-45 (a) provides: 'A motion for summary judgment shall be supported by appropriate documents, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and other supporting documents.' " *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 836 n.14, 277 A.3d 200 (2022).

[9] Practice Book § 10-61 provides: "When any pleading is amended the adverse party may plead thereto within the time provided by Section 10-8 or, if the adverse party has already pleaded, alter the pleading, if desired, within ten days after such amendment or such other time as the rules of practice, or the judicial authority, may prescribe, and thereafter pleadings shall advance in the time provided by that section. If the adverse party fails to plead further, pleadings already filed by the adverse party shall be regarded as applicable so far as possible to the amended pleading."

[10] Pursuant to Practice Book § 10-60 (a), except as provided in Practice Book § 10-66, which governs amendments to statements of amounts in demand, a pleading may be amended "(1) [b]y order of judicial authority; or (2) [b]y written consent of the adverse party; or (3) [b]y filing a request for leave to file an amendment . . . ."

[11] The court determined that the five original special defenses reasserted by the defendants in the October 15, 2019 pleading were not procedurally improper.

[12] In *Mollo*, the plaintiff's counsel was present at the beginning of the short calendar hearing, but the defendant's counsel was not. *Nationstar Mortgage, LLC* v. *Mollo*, supra, 180 Conn. App. 788. The plaintiff's counsel argued that the defendant's objection to its motion for summary judgment as to liability only was untimely. Id., 788–89. Alternatively, if the court were to consider the defendant's objection, the plaintiff's counsel argued that the plaintiff should be granted additional time to amend its motion for summary judgment. Id., 789. Without the defendant's counsel present, the court overruled the defendant's objection and granted the plaintiff's motion. Id. Later that day, while the plaintiff's counsel was still present, the defendant's counsel arrived, and the court agreed to rehear argument. Id. After hearing additional argument, the court again overruled the defendant's objection and maintained its decision granting the plaintiff's motion. Id.

[13] This court noted that it did not countenance the defendant's late filing of his objection to the plaintiff's motion for summary judgment as to liability only, but that the defendant's conduct did "not justify the [trial] court's consideration of the plaintiff's motion as having adequately raised and refuted the special defenses so as to justify granting summary judgment." *Nationstar Mortgage, LLC* v. *Mollo*, supra, 180 Conn. App. 795 n.14.

[14] Although *Mollo* concerned an appeal filed in a foreclosure action; *Nationstar Mortgage, LLC* v. *Mollo*, supra, 180 Conn. App. 783; we do not read *Mollo* as limiting its rationale to foreclosure matters only.

[15] The plaintiff argues that any error with respect to the four original special defenses is harmless because the court rejected them on the merits, which the defendants do not address on appeal. This argument is unavailing, however, because *Mollo* instructs that the court could not consider, sua sponte, the merits of these special defenses without the plaintiff addressing them in its summary judgment submissions. See *Nationstar Mortgage, LLC* v. *Mollo*, supra, 180 Conn. App. 798.

[16] The defendants do not challenge on appeal the court's rejection of the new special defenses as procedurally improper and, thus, we do not discuss the propriety of that ruling.

Additionally, we note that the amended ninth and tenth special defenses, individually or collectively, alleged that the defendants had given the plaintiff implied permission to use the claimed easement area and that the plaintiff had recognized the defendants' superior claim to the claimed easement area. Although these issues were not properly asserted as special defenses, such that the plaintiff was not obligated to discuss them to invoke the court's authority as to its motion for summary judgment, these issues were addressed in the parties' respective summary judgment submissions and analyzed elsewhere in the court's decision. See part I B 2 a of this opinion.

[17] Consistent with this court's rescript in *Mollo*, we reverse the judgment of the trial court granting the plaintiff's motion for summary judgment and remand the case for further proceedings according to law. It will remain within the trial court's discretion on remand as to whether to grant leave for the filing of (1) an amended answer and special defenses to the extent leave is requested and required under Practice Book § 10-60 (a) (3) and/or (2) any additional motions for summary judgment under the circumstances of the present case.

[18] The defendants also claim that the court improperly concluded that the portion of the Michael affidavit at issue could be disregarded pursuant to the "sham affidavit" rule, which "refers to the trial court practice of disregarding an offsetting affidavit in opposition to a motion for summary judgment that contradicts the affiant's prior deposition testimony" and which has yet to be adopted expressly by our appellate courts. (Internal quotation marks omitted.) *Kenneson* v. *Eggert*, 176 Conn. App. 296, 310, 170 A.3d 14 (2017). Briefly, we note that, in replying to the defendants' objection to its motion for summary judgment, the plaintiff asserted that the Michael affidavit conflicted with Michael's prior deposition testimony, which was elicited on December 12, 2018, and, thus, constituted a sham affidavit. In its decision, the court stated in a footnote that, "[w]ere the sham affidavit rule [to] be adopted in Connecticut . . . the court would have no hesitation about determining it to be applicable here"; however, the court expressly declined to adopt and to apply the rule in this case, instead "prefer[ring] to rely on established rules of evidence" and determining that the relevant portion of the Michael affidavit was not competent evidence pursuant to Practice Book § 17-46. Accordingly, we need not address the defendants' claim regarding the sham affidavit rule, and we leave for another day the question of whether the rule is a viable doctrine in Connecticut.

[19] The defendants also submitted the transcript of Michael's deposition taken on December 12, 2018, which contains testimony in line with his averments regarding his responsibilities as to Safavieh Atlantic, LLC, and his presence on the defendants' properties.

[20] Although the court used the phrases "claimed easement" and "claimed easement area" in its analysis, we note that Michael's averments concerned only the plaintiff's use of the alleyway rather than the claimed easement area as a whole.

[21] The court also stated that, in asserting its prescriptive easement claim, the plaintiff was not contending that the claimed easement area was the sole means providing access to its parking lot but, rather, that, as a result of the configuration of the surrounding roads, the claimed easement area provided the only reasonable route to the plaintiff's parking lot for drivers traveling southbound on Atlantic Street. As the court further explained, "[t]he failure to observe particular drivers using the alleyway . . . could only be of any significance if it were known that the driver was headed southbound on Atlantic Street—a northbound driver likely would never be seen by the defendants' principals or witnesses but the failure to observe such individuals would be of no significance to the regularity of use."

[22] Blauner averred in relevant part that, "[i]n or about the late 1990s, I became acquainted with Michael . . . . I often saw [Michael] as I was driving on over the paved area behind 234 Atlantic [Street] to or from the [plaintiff's] parking lot. . . . We frequently exchanged pleasantries . . . . There is no question that he observed me driving over his properties (including up and down the alleyway) to and from [the plaintiff's] parking lot."

[23] The defendants also assert that there are genuine issues of material fact as to whether the plaintiff has a deeded easement right to a portion of the paved area, which, the defendants posit, would defeat the plaintiff's prescriptive easement claim. The defendants raised this issue for the first time by way of their amended second special defense asserted in their October 15, 2019 pleading, which the court rejected as procedurally improper. See part I A of this opinion. The defendants do not claim on appeal that the court committed error in rejecting this issue on procedural grounds. Thus, although the court discussed the merits of the amended second special defense after it had deemed the defense to be procedurally defective and determined that there was no evidence of a deeded easement, we decline to address the defendants' claim that there exist genuine issues of material fact regarding a deeded easement because of their failure to challenge the other, procedural basis for the court's disposition of this issue.

[24] The defendants limit their claim to the alleyway as opposed to the claimed easement area as a whole.

[25] In support of their argument, the defendants rely in part on evidence

reflecting an agreement reached by the parties that enabled the defendants to use the plaintiff's parking lot in exchange for the plaintiff using parking spaces located to the rear of 200 Atlantic Street. Such evidence, however, is irrelevant because it is undisputed that 200 Atlantic Street was purchased in 2014, well after the plaintiff had acquired the prescriptive easement in 1997.

[26] The defendants claim that *Sachs* v. *Toquet*, 121 Conn. 60, 183 A. 22 (1936), supports their claim. We disagree. In *Sachs*, the parties were abutting landowners who, by way of deed, had the right to use a common, ten foot driveway without interference from one another. Id., 62–63. One of the issues addressed by our Supreme Court on appeal was whether the trial court's subordinate findings supported its conclusion that the plaintiff had acquired a prescriptive right "to permit vehicles to stand upon the driveway for such reasonable length of time as would reasonably permit the loading and unloading of goods at the rear door of his store." Id., 65–66. Our Supreme Court concluded that "[t]he trial court ha[d] not found that [the] plaintiff's use was exercised under a claim of right or that it was adverse. It ha[d] found facts which clearly establish that it was not of that character. The temporary parking of vehicles in the driveway while loading or unloading might have continued for years without interfering with the use of the driveway by the defendants, and such parking would be more consistent with a permissive use as a matter of neighborly accommodation than an invasion of the defendants' rights under a claim of right." Id., 66–67. Moreover, the trial court found that, except for one instance that occurred shortly before the filing of the action, the plaintiff moved vehicles parked on the driveway on request to allow other vehicles to pass, which, our Supreme Court determined, "disclose[d] that [the] plaintiff's use of the driveway for parking was accompanied by a recognition of the right of the defendants to pass and repass without interference by such parking, and it is inconsistent with the claim that such parking was exercised under a claim of right." Id., 67. In short, we do not construe the circumstances of the present case to be akin to the facts in *Sachs* demonstrating permissive use and recognition of the defendants' right as to the property.

[27] The court also seemed to question whether the defendants' evidentiary submissions as to whether there was a consistent public use of the alleyway and the paved area were conclusory rather than factual. Insofar as the court deemed their evidentiary submissions to be conclusory, the defendants argue that the court's determination was improper. We do not construe the court's decision to reflect that the court, in fact, rejected the defendants' evidentiary submissions in this regard. Indeed, the court's analysis focused on whether there was a distinction between the public's use and the plaintiff's use. Thus, we need not address this claim.

[28] In their principal appellate brief, the defendants represent that they never disputed that the plaintiff has a deeded easement right to use a portion of the paved area to access its parking lot. As the court recognized in its memorandum of decision, however, that representation is belied by the record.

[29] As we explained in footnote 23 of this opinion, we decline to examine whether there is a genuine issue of material fact as to whether the plaintiff has a deeded easement right to a portion of the paved area.

[30] This claim is distinct from the defendants' separate claim, concerning the summary judgment rendered in favor of the plaintiff, that there are genuine issues of material fact as to whether the plaintiff owns a deeded easement right to a portion of the paved area. See footnote 23 of this opinion. This distinction is further delineated by the amended first and second special defenses asserted by the defendants. In the amended first special defense, the defendants alleged that the plaintiff could not maintain a prescriptive easement claim because, in its original complaint and in its amended complaint, the plaintiff pleaded that it owned deeded easement rights. In the amended second special defense, the defendants alleged that, in fact, the plaintiff owned deeded easement rights.

[31] The defendants reassert their argument that the plaintiff could seek to reinstate its deeded easement claims in the event that its prescriptive easement claim is unsuccessful. Like the trial court, we reject this contention as purely speculative.