# CONNECTICUT HOUSING FINANCE AUTHORITY *v.* JOHN FITCH COURT ASSOCIATES LIMITED PARTNERSHIP ET AL.
## (AC 17299)

O'Connell, C. J., and Foti and Spear, Js.

Argued January 16—officially released June 23, 1998

*Mark S. Baldwin,* for the appellants (defendants).

*James J. Tancredi,* with whom was *Robert J. O'Hara,* for the appellee (plaintiff).

*Opinion*

SPEAR, J. The plaintiff, Connecticut Housing Finance Authority (CHFA),[1] commenced mortgage foreclosure proceedings against the defendants, John Fitch Court Associates Limited Partnership (Fitch) and Carr Property Management, Inc. (Carr Management).[2] The subject commercial property, located in Windsor, secured a promissory note in the amount of $1,985,600. CHFA sought foreclosure based on several alleged defaults by Fitch under the terms of the note and the mortgage deed.

The defendants appeal from the summary judgment that was rendered in favor of the plaintiff on the complaint and on the defendants' counterclaim. They assert that summary judgment was improper because (1) Carr Management was a third party beneficiary of the note and the mortgage deed between Fitch and CHFA, and was therefore entitled to pursue a counterclaim against CHFA, (2) the counterclaim for wrongful acceleration was legally sufficient and was supported by evidence that raised genuine issues of material fact, and (3) Fitch's special defense that alleged breach of the implied covenant of good faith and fair dealing was valid and was also supported by evidence that raised genuine issues of material fact. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. To secure a promissory note in the

---

[1] CHFA is "a body politic and corporate" of the state, defined in and governed by General Statutes § 8-244.

[2] Prior to August, 1993, Carr Management was Fitch's managing agent of the subject property, a federally subsidized housing project for the elderly in Windsor.

amount of $1,985,600, Fitch, the record owner of the subject property, executed and delivered a mortgage deed, dated January 22, 1988, in favor of CHFA with respect to all of Fitch's rights in the property.[3] Fitch also executed a declaration and agreement of restrictive covenants in favor of CHFA on the same date in which Fitch agreed to be "regulated and restricted" by CHFA as "provided by the mortgage loan documents."

When Fitch subsequently defaulted under the terms of the note and the mortgage deed, CHFA exercised its option to declare the entire balance on the note due and payable. By letter dated February 24, 1993, CHFA informed Fitch that Fitch had ten days from the date of the letter to cure the listed defaults[4] or CHFA would pursue its available legal remedies. Fitch countered by letter dated March 8, 1993, in which it disputed the claimed monetary defaults because the thirty day grace period, as provided for by the terms of the note and the mortgage deed, had not yet expired as to the February 1, 1993 payment. Fitch claimed that it would not be in default as to the February 1, 1993 payment until March 2, 1993. CHFA responded by letter dated March 11, 1993, which stated that as to the monetary defaults that were still unpaid, the thirty day grace period had expired and, if the February payments were made

[3] Fitch, as lessor, and the town of Windsor, as lessee, had previously executed a lease agreement regarding the subject property, referred to as a leasehold mortgage deed. This agreement encumbers the subject property. Fitch granted to CHFA a mortgage interest in all of Fitch's right, title and interest in this lease agreement. As additional security for the note, Fitch also executed in favor of CHFA a collateral assignment of leases and rentals, an assignment of proceeds, a building loan agreement and a covenant of compliance and regulatory agreement.

[4] A number of monetary and nonmonetary defaults were alleged by CHFA, which included failure to (1) remit a portion of the February 1, 1993 payment that was due, (2) remove all liens filed against the property, (3) maintain the property in good condition and (4) disclose information regarding the then current insolvency of the Fitch Court Limited Partnership.

immediately, CHFA would allow Fitch until March 25, 1993, to cure the nonmonetary defaults.[5]

CHFA commenced foreclosure proceedings in May, 1993. In July, 1993, CHFA and Fitch entered into a lockbox agreement, whereby all rents and moneys received from the property would be paid into an account for CHFA's benefit. In the agreement, Fitch confirmed that it was in default under the terms of the mortgage deed.[6] During a deposition on March 8, 1994, Fitch's general partner, Christopher Carr,[7] testified that Fitch was in default for, inter alia, failure to make timely payments as they became due under the note. Fitch subsequently failed either to make payments or to effect a cure of the alleged defaults. The trial court granted CHFA's motion for summary judgment as to the complaint and the counterclaim, and this appeal followed.

Preliminarily, we note that "[o]ur standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now Practice Book (1998 Rev.) § 17-49] provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). Further, "the

---

[5] In the letter, CHFA stated, "If the February payments are immediately delivered to CHFA, we will decelerate this loan to afford you until March 25, 1993, to offer an acceptable cure to CHFA. If, however, the February payments are not made . . . by the close of business Monday, March 15, 1993, CHFA hereby reaffirms its acceleration of this loan effective March 2, 1993."

[6] Paragraph one of the lockbox agreement provides: "[Fitch] hereby confirms that it is in default under the Mortgage and that pursuant thereto, its license under the Mortgage to collect all rents and other funds from whatever source from the [premises] was revoked as of the dates hereof."

[7] Carr was managing general partner of Fitch, and president and controlling shareholder of Carr Management during all periods relevant to this case.

moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Citations omitted; internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). Moreover, if the evidence presented by the moving party is sufficient to establish that judgment is warranted as a matter of law, it is not rebutted by the bald statement that an issue of fact does exist. *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 579, 573 A.2d 699 (1990).

I

The defendants first claim that summary judgment on the counterclaim[8] was improper as to Carr Management because a genuine issue of material fact existed as to whether Carr Management was an intended third party beneficiary of the note and the mortgage deed between Fitch and CHFA. We are unpersuaded.

Whether a party is a third party beneficiary of a contract is a question of the intent of the contracting parties. "Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it

_____

[8] The two paragraph counterclaim alleges: "1. By its letter dated February 24, 1993, a copy of which is attached to the amended complaint as Exhibit F-1, the plaintiff wrongfully accelerated the note and demanded the full payment thereof.

"2. As a result of amended wrongful acceleration and demand, the defendants have suffered direct and consequential damages for which the plaintiff is responsible."

becomes a question of law for the court." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 232, 654 A.2d 342 (1995). "[O]ur courts have continued to refer to the intent of the parties to create a *direct obligation* between the promisor and the beneficiary as the test for determining whether a nonparty to the contract is a third party beneficiary thereof. . . . In determining whether a person has a right of action as a third party beneficiary, [t]he ultimate test to be applied . . . is whether the intent of the parties to the contract was that the promisor should assume a *direct obligation* to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." (Citation omitted; emphasis added; internal quotation marks omitted.) *Grigerik* v. *Sharpe*, 45 Conn. App. 775, 783–84, 699 A.2d 189, cert. granted on other grounds, 243 Conn. 918, 701 A.2d 342 (1997). Further, "[t]he intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but *what intention is expressed in the language used*." (Emphasis added.) *Ives* v. *Willimantic*, 121 Conn. 408, 411, 185 A. 427 (1936).

Here, the motives and the purposes of the parties to the contract, the note and the mortgage deed, collectively, are evidenced by the clear and unambiguous language that was used in the respective documents. Because "[a] promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such"; *Citicorp Mortgage, Inc.* v. *Porto*, 41 Conn. App. 598, 602, 677 A.2d 10 (1996); we turn to the express language in each of the loan instruments. Specifically, the note refers to only one maker, Fitch,

and the mortgage deed refers to only one mortgagor, also Fitch. The only signatories to the note and the mortgage deed were CHFA and Fitch. Furthermore, neither the note nor the mortgage deed referenced Carr Management, directly or indirectly, as either a direct or an intended beneficiary of the agreement between CHFA and Fitch.

Equally unavailing is Carr Management's claim that it is a third party beneficiary of the note and the mortgage deed because of a management agreement between Fitch and a predecessor management company, whom Carr Management replaced. That agreement, dated January 1, 1988, expired on May 31, 1993. In that agreement, the prior management company acknowledged that Fitch was required to abide by the terms of the mortgage loan documents, but there was no indication in the agreement of the plaintiff's intention to incur a direct obligation to Carr Management.

Further review of the record reveals that the only evidence that was offered to support the defendants' theory that CHFA ever intended to assume a direct obligation to Carr Management was a portion of Christopher Carr's affidavit. The trial court determined that the only portion of that affidavit "which might create a doubt" as to whether Carr Management was a third party beneficiary of the note and the mortgage deed was the portion that stated: "As a result of the foregoing, it was the intent of the parties on January 22, 1988 when all of the foregoing instruments were entered into, that CHFA would owe a direct obligation to [Carr Management]." The trial court soundly reasoned that Carr's affidavit stated only conclusions, without offering specific facts. "[A]n adverse party, by affidavit or as otherwise provided by § 380 of the 1978 Practice Book [now Practice Book (1998 Rev.) § 17-45], must set forth *specific facts* showing that there is a genuine issue for

trial, and if he does not so respond, summary judgment shall be entered against him. . . . Moreover, *mere conclusions are insufficient* . . . ." (Citations omitted; emphasis added.) *Farrell* v. *Farrell*, 182 Conn. 34, 38–39, 438 A.2d 415 (1980). We conclude that the express language of both loan instruments evidenced no intent that Carr Management was to be a third party beneficiary of the note and the mortgage deed.

We are satisfied from our review of the record that the trial court properly determined that the defendants did not proffer any relevant and material evidence to sustain their claim that a genuine issue of material fact existed as to this issue.

## II

The defendants next claim that the trial court improperly rendered summary judgment on their counterclaim for wrongful acceleration of the note. We disagree.

"Notices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions." (Internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Porto*, supra, 41 Conn. App. 602.

Here, the unambiguous language in both the promissory note and the mortgage deed clearly states the intention of the parties to this transaction with respect to the issues of notice and acceleration. Specifically, paragraph four of the promissory note states that "[e]ach and *every maker*, endorser, guarantor and surety of this Note and all others who may become liable for all or

any part of this obligation *do hereby waive demand . . . and notice of nonpayment of this Note . . . .*" (Emphasis added.) Clearly, CHFA was under no obligation to give notice to Fitch regarding nonpayment of the note.

Moreover, an acceleration clause was expressly provided for under article one, § 1.01 (a), of the mortgage deed, whereby "[a]ny deficiency in the amount of [a] . . . monthly payment required to be paid shall constitute an Event of Default hereunder and the whole of said principal sum and all accrued unpaid interest thereon shall immediately become due and payable at the option of [CHFA]." It is well established that the exercise of an acceleration clause is proper upon an event of default as provided for and controlled by the terms of the note and the mortgage deed. *Burt's Spirit Shop, Inc.* v. *Ridgway*, 215 Conn. 355, 365, 576 A.2d 1267 (1990); *Christensen* v. *Cutaia*, 211 Conn. 613, 617, 560 A.2d 456 (1989).

Here, under the express terms of the note, Fitch waived its right to receive notice from CHFA regarding nonpayment of the note. Furthermore, the express terms of the mortgage deed provided CHFA with the right to accelerate the full balance of the note as immediately due and payable at CHFA's option upon any event of default by Fitch. While it is not disputed that CHFA prematurely issued notice of default to Fitch on February 24, 1993, such notice was unnecessary as to the monetary default.[9] Furthermore, Fitch's general partner, Carr, admitted that Fitch was, in fact, subsequently in default under the terms of the note.[10] Because

---

[9] The trial court did label the premature notice a "technical" breach by CHFA. We note, however, that CHFA's letter of default dated March 11, 1993, was beyond the thirty day grace period.

[10] In its memorandum of decision, the trial court stated that "there was no relevant and material evidence to contradict [CHFA's] factual statement in regard to the failure of [Fitch] to pay the February, March, April and May installments due on the note and mortgage before this suit was begun on

"the institution of a foreclosure action constitutes a valid exercise of a mortgagee's acceleration right"; *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 180, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985); we conclude that CHFA's acceleration was proper under the circumstances of this case. The defendants offered no relevant and material evidence in support of their counterclaim. Because there was no genuine issue of material fact, the motion for summary judgment was properly granted.

### III

Finally, the defendants claim that the trial court improperly determined that the plaintiff was entitled to summary judgment with respect to Fitch's special defense that CHFA breached the implied covenant of good faith and fair dealing by wrongfully accelerating the debt. We are unpersuaded.

The defendants contend that, as a result of previous litigation between CHFA and some of Fitch's tenants, CHFA wrongfully accelerated the debt "in retaliation for the fact that CHFA and its two senior-most executives were made parties to the [previous] litigation." We can hardly deem as wrongful CHFA's acceleration of the debt in this case because Fitch conceded numerous defaults under the terms of the note and the mortgage. Moreover, CHFA is a public body that utilizes public funds. To protect the public fisc by way of foreclosure, when there are undisputed material defaults, is hardly wrongful. There are no genuine issues of material fact concerning this claim, and CHFA was entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.

---

May 21, 1993. The February, March and April payments were then due and owing, and the note and mortgage were in default."