******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# UNITED CLEANING & RESTORATION, LLC *v.*
# BANK OF AMERICA, N.A.
## (AC 45854)

Moll, Seeley and Keller, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for an alleged breach of contract and for unjust enrichment in connection with the plaintiff's restoration of a property that had been damaged by a fire. L, the property owner, financed his purchase of the property with a mortgage loan that the defendant serviced. In addition, L obtained a homeowners insurance policy for the property from N Co. After the fire, L filed a claim with N Co. N Co. paid out insurance proceeds on the claim, which, in accordance with the loan, were held by the defendant to pay, on behalf of L, for repair and restoration of the property. L entered into a contract with the plaintiff to make repairs to the property in exchange for payments from the proceeds. Less than one year later, when the plaintiff's repair work was approximately 50 percent completed, L died. Although the defendant previously had made multiple disbursements out of the proceeds to the plaintiff as it made repairs, the defendant ceased paying the plaintiff following L's death. At the request of T, a comortgagor and coexecutor of L's estate, the defendant applied the remaining proceeds to pay down the outstanding mortgage loan balance in connection with the sale of the property. The plaintiff claimed that it was an intended third-party beneficiary of the mortgage, that the defendant violated the terms of the mortgage when it applied the proceeds to the outstanding mortgage loan balance instead of paying the proceeds to the plaintiff for the work it had completed, and that its repair work had benefited the defendant by enhancing the marketability of the property to its detriment. The defendant filed a motion for summary judgment as to both counts of the complaint, arguing that there was no genuine issue of material fact that the defendant was not a party to the proceeds contract and that the plaintiff was not a party to the note or the mortgage, that the express language of the note and the mortgage demonstrated no intent for the plaintiff to be a third-party beneficiary thereof, and that there was no genuine issue of material fact that it was not unjustly enriched by its application of the proceeds to the outstanding mortgage loan balance. The defendant supported its motion with, inter alia, a business record affidavit from S, its assistant vice president, and a supplemental affidavit from K, its counsel. The trial court granted the defendant's motion, and the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on its claim that the trial court erred in granting the defendant's motion for summary judgment because the

supporting affidavits did not satisfy the requirements of the applicable rule of practice (§ 17-46) and the common law:

a. The trial court did not err in considering S's affidavit in granting the defendant's motion for summary judgment; because S attested that the defendant was the mortgage loan servicer, that she, in her role as an assistant vice president, was authorized to make the affidavit, that she had personal knowledge of the facts and matters stated therein, that she was familiar with the types of records maintained by the defendant, including the loan at issue, and that she had access to and personally reviewed the defendant's business records kept in the ordinary course of its regularly conducted business, including records pertaining to the property, S was a records custodian authorized to authenticate the defendant's business records without her actual involvement in the transaction, and her affidavit sufficiently demonstrated her competency to aver to the information therein.

b. This court declined to review the plaintiff's unpreserved claim that K's affidavit did not constitute competent evidence pursuant to Practice Book § 17-46, as the plaintiff raised the claim for the first time in a motion to reargue and, on appeal, it did not challenge the trial court's denial of that motion.

2. The trial court properly rendered summary judgment for the defendant because there were no genuine issues of material fact as to either count of the plaintiff's complaint:

a. The trial court properly determined that the plaintiff was not an intended third-party beneficiary of the mortgage: the clear and unambiguous language of the note and the mortgage evinced no intent of the contracting parties to confer third-party beneficiary status on the plaintiff, as there was no direct or indirect reference to the plaintiff in either the note or the mortgage; moreover, the language of the mortgage did not require that the defendant make direct payments of the insurance proceeds to a third party and further provided that insurance proceeds would cover repairs made to the property if the repair was feasible and the defendant's security was not lessened or unless the defendant and L otherwise agreed in writing, and the purpose of that language was to protect the defendant's interests and not to serve as a guarantee on the payment of repair and restoration services; furthermore, this court was unpersuaded by the plaintiff's argument that extrinsic evidence sufficiently raised a genuine issue of material fact regarding its third-party beneficiary status, as, having concluded that the clear and unambiguous language of the mortgage reflected no intent to make the plaintiff a third-party beneficiary, the use of parol evidence to vary or contradict such language was forbidden.

b. The trial court correctly determined that there was no genuine issue of material fact as to the plaintiff's unjust enrichment claim; the defendant presented evidence that it was not benefited for the purposes of the plaintiff's unjust enrichment claim when it applied the proceeds toward

the outstanding mortgage balance and the plaintiff failed to produce evidence that it had a superior equitable entitlement to the proceeds.

Argued September 7, 2023—officially released May 28, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Shah, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Lisa M. Anderson*, for the appellant (plaintiff).

*Pierre-Yves Kolakowski*, for the appellee (defendant).

*Opinion*

MOLL, J. The plaintiff, United Cleaning & Restoration, LLC, appeals from the judgment of the trial court granting the motion for summary judgment filed by the defendant, Bank of America, N.A., as to the plaintiff's two count amended complaint asserting claims of breach of contract and unjust enrichment. On appeal, the plaintiff claims that the court erred in granting the defendant's motion for summary judgment because the court improperly (1) considered evidence submitted by the defendant in support of its motion that failed to satisfy the evidentiary requirements of Practice Book § 17-46 and the common law, and (2) concluded that there were no genuine issues of material fact as to the plaintiff's claims.[1] We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of this appeal. The plaintiff commenced the present action on February 5, 2021. In its two count amended complaint (operative complaint), filed on March 3, 2022, the plaintiff alleged in relevant part as

[1] See footnotes 8 and 12 of this opinion.

follows. Prior to his death on February 4, 2019, Robert Lopez was the owner of premises located at 25 Deerfield Drive in Easton (property). To finance his purchase of the property, Lopez took out a mortgage loan,[2] which the defendant serviced. In addition, Lopez obtained a homeowners insurance policy for the property issued by Nationwide Property & Casualty Insurance Company (Nationwide).

In January, 2018, a fire occurred at the property. Thereafter, Lopez filed a claim with Nationwide relating to the loss caused by the fire. Nationwide paid out insurance proceeds (proceeds) on the claim, and, in accordance with the loan, the proceeds were held by the defendant to pay, on behalf of Lopez, for repairs and restoration of the property. On May 8, 2018, Lopez and the plaintiff entered into an agreement (proceeds contract) pursuant to which the plaintiff would make repairs to the property in exchange for payment from the proceeds. The plaintiff subsequently began its work on the property, and the defendant made multiple disbursements out of the proceeds to the plaintiff as repairs were made.[3]

Lopez passed away on February 4, 2019. At the time, the plaintiff's repair work was approximately 50 percent finished. Following Lopez' death, the defendant ceased paying the plaintiff for the work that it had completed. On May 8, 2019, in connection with the sale of the property, Karen Trusty, a comortgagor and a coexecutor of Lopez' estate, requested that the defendant apply

[2] In their evidentiary submissions relating to the defendant's motion for summary judgment, both parties relied on an open-end mortgage deed reflecting that, in July, 2007, Lopez and Karen Trusty executed a mortgage on the property in favor of Countrywide Home Loans, Inc., to secure a promissory note executed by Lopez in the amount of $569,750.

[3] The parties do not appear to dispute that, on July 10, 2018, Lopez notified the defendant of the loss caused by the fire and provided the defendant with a copy of the proceeds contract.

the remaining proceeds available to pay down the outstanding mortgage loan balance on the property, which request the defendant granted without consulting with or notifying the plaintiff. The plaintiff then demanded that the defendant remit payment of the outstanding balance owed for the work it had completed, totaling $46,850.13, which demand the defendant refused.

In its operative complaint, the plaintiff asserted claims of breach of contract (count one) and unjust enrichment (count two). In support of count one, the plaintiff alleged that (1) it was an intended third-party beneficiary of the mortgage and (2) the defendant violated the terms of the mortgage when it applied the proceeds to the outstanding mortgage loan balance instead of paying the proceeds to the plaintiff for the work that it had completed. In support of count two, the plaintiff alleged that, to its detriment, the defendant had applied the proceeds toward the outstanding mortgage loan balance notwithstanding that its repair work had benefited the defendant by enhancing the marketability of the property.

On March 15, 2022, the defendant filed an amended answer and special defenses. The defendant admitted in relevant part that (1) the fire at the property had occurred, (2) the mortgage required it to be named as a loss payee on Lopez' homeowners insurance policy and authorized it "to hold and disburse insurance proceeds in the event of damage to the property," (3) Nationwide paid out the proceeds for the loss caused by the fire, and (4) it had made disbursements out of the proceeds to the plaintiff prior to Trusty's request that the remaining proceeds be applied to the outstanding mortgage loan balance.[4] The defendant denied, however, the plaintiff's allegations that (1) the plaintiff was

---

[4] According to the defendant, between October, 2018, and May, 2019, it had disbursed $133,975 to the plaintiff out of the proceeds.

an intended third-party beneficiary of the mortgage and (2) it had breached the mortgage by failing to pay the plaintiff the alleged balance owed for the repair work. The defendant further denied the plaintiff's substantive allegations in support of count two. In addition, by way of its first special defense, the defendant alleged that it was not a party to the proceeds contract and that the mortgage expressly identified Lopez as the sole obligor with respect to contracts with third parties he entered into for the repair of the property following a loss.[5]

On April 20, 2022, the defendant filed a motion for summary judgment as to both counts of the operative complaint. The defendant's motion was accompanied by a memorandum of law, exhibits, including a copy of the mortgage, and a business records affidavit executed by an assistant vice president of the defendant, Stephanie A. Saporita (Saporita affidavit), with additional exhibits appended thereto. In addressing the plaintiff's breach of contract claim, the defendant argued that (1) there was no genuine issue of material fact that (a) it was not a party to the proceeds contract and (b) the plaintiff was not a party to the note or the mortgage, and (2) the express language of the note and the mortgage demonstrated no intent for the plaintiff to be a third-party beneficiary thereof. In addition, the defendant argued that there was no genuine issue of material fact that it was not unjustly enriched by its application of the proceeds to the outstanding mortgage loan balance.

On May 23, 2022, the plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment, which was accompanied by the personal affidavit of the plaintiff's managing member, William Leone (Leone affidavit), and a copy of a portion

---

[5] The defendant asserted thirteen additional special defenses, which are not relevant to the issues on appeal.

of the mortgage. The plaintiff argued that the defendant was not entitled to summary judgment as to (1) either count of the operative complaint because the evidence submitted in support of its motion for summary judgment, including the Saporita affidavit, was "inappropriate and insufficient," (2) count one because there was a genuine issue of material fact as to whether the mortgage conferred third-party beneficiary status on the plaintiff, and (3) count two because (a) unjust enrichment is an equitable claim not suitable for adjudication by way of a motion for summary judgment and (b) the record demonstrated genuine issues of material fact. On June 6, 2022, the defendant filed a reply brief, accompanied by a supplemental affidavit of its counsel, Attorney Pierre-Yves Kolakowski (Kolakowski affidavit), with additional exhibits attached thereto.

On June 24, 2022, the court heard oral argument on the defendant's motion. On August 16, 2022, the court, *Shah*, *J.*, issued a memorandum of decision granting the defendant's motion for summary judgment as to both counts of the operative complaint. Addressing count one, the court determined that, on the basis of the clear and unambiguous language of the note and the mortgage, the plaintiff was not an intended third-party beneficiary thereof and that the plaintiff failed to show the existence of a material fact in dispute. With regard to count two, the court concluded "that the plaintiff . . . failed to raise any genuine issues of material fact given the evidence submitted by the defendant." On August 30, 2022, the plaintiff filed a motion to reargue, which the court denied on September 8, 2022. This appeal followed. Additional procedural history will be provided as necessary.

I

The plaintiff first claims that the trial court erred in granting the defendant's motion for summary judgment

as to both counts of the operative complaint because the supporting affidavits submitted by the defendant, i.e., the Saporita affidavit and the Kolakowski affidavit, did not satisfy the requirements of Practice Book § 17-46 and the common law. As to the Saporita affidavit, we disagree on the merits; as to the Kolakowski affidavit, we conclude that the plaintiff's claim is unpreserved.

A

We first turn to the plaintiff's contention that the Saporita affidavit did not constitute competent evidence pursuant to Practice Book § 17-46. Specifically, the plaintiff contends that the Saporita affidavit did not affirmatively show that Saporita possessed personal knowledge of, or was competent to aver to, the facts contained therein as she did not witness the execution of, nor personally execute, any documents relating to Lopez and the defendant, and she had not been personally involved in the matters between Lopez and the defendant. In response, the defendant relies on the business records exception to the hearsay rule to argue that the Saporita affidavit and the exhibits annexed thereto constituted competent evidence supporting the defendant's motion for summary judgment. We agree with the defendant.

We begin by setting forth the well settled legal principles and standard of review governing our resolution of this claim. Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "Generally, [o]ur review of the trial court's decision to grant the . . . motion for summary judgment is plenary. . . . When presented with an evidentiary issue, as in this case, our standard of review depends on the

specific nature of the claim presented. . . . Thus, [t]o the extent a trial court's admission of evidence is based on an interpretation of [law], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . A trial court's decision to admit evidence, if premised on a correct view of the law, however, calls for the abuse of discretion standard of review." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 652–53, 137 A.3d 1 (2016).

Practice Book § 17-46 provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto." "Section 17-46 sets forth three requirements necessary to permit the consideration of material contained in affidavits submitted in a summary judgment proceeding. The material must: (1) be based on personal knowledge; (2) constitute facts that would be admissible at trial; and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. . . . Affidavits that fail to meet the criteria of . . . § 17-46 are defective and may not be considered to support the judgment." (Citation omitted; internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, 216 Conn. App. 530, 550, 285 A.3d 1128 (2022).

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. . . . Unless subject to an exception, hearsay is inadmissible. . . . If the proffered evidence consists of business records, the

court must determine whether the documents satisfy the modest requirements under [General Statutes] § 52-180[6] to admit them under the business records exception to the hearsay rule. . . .

"To admit evidence under the business record exception to the hearsay rule, a trial court judge must first find that the record satisfies each of the three conditions set forth in . . . § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was in the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . To qualify a document as a business record, the party offering the evidence must present a witness who testifies that these three requirements have been met. . . . Additionally, business records may be authenticated by the testimony of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of business." (Citations omitted; footnote added; internal quotation marks omitted.) *HSBC Bank USA, National Assn.* v. *Gilbert*, 200 Conn. App. 335, 348–49, 238 A.3d 784 (2020).

The following additional procedural history is relevant to our resolution of this claim. In support of its motion for summary judgment, the defendant submitted the Saporita affidavit accompanied by thirteen exhibits,

[6] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

including copies of (1) the endorsed note, (2) a July 10, 2018 letter addressed to the defendant from Lopez notifying the defendant of the fire and providing the defendant with a copy of the proceeds contract, (3) payment records, and (4) email correspondence reflecting Trusty's request that the defendant apply the balance of the proceeds to the outstanding mortgage loan balance. Saporita attested that the defendant was the mortgage loan servicer, that she, as an assistant vice president of the defendant, was authorized to make the affidavit, and that she had personal knowledge of the facts and matters stated therein. Saporita further attested that, in the regular performance of her job responsibilities, she "[is] familiar with the types of records maintained by [the defendant] in connection with mortgage loans serviced by [the defendant] and/ or its predecessor by merger . . . including the loan here at issue." Additionally, she attested that she had access to, and personally reviewed, business records kept in the ordinary course of the defendant's regularly conducted business activities, including the defendant's regularly kept business records pertaining to the property. Saporita also attested that, on the basis of her review of the aforementioned records, (1) Lopez and the plaintiff had entered into the proceeds contract for the restoration of the property, (2) on July 10, 2018, Lopez notified the defendant of the fire and property loss and provided the defendant with a copy of the proceeds contract, (3) the defendant made payments out of the proceeds to the plaintiff, and (4) the defendant was asked by Trusty to apply the remainder of the proceeds to the unpaid mortgage loan balance.[7]

---

[7] In its memorandum of decision, the court acknowledged the plaintiff's objections to the annexed exhibits, stating that it "review[ed] the evidence submitted by both parties" to reach the conclusion that no issue of material fact was in dispute. Although the court did not expressly make findings that the exhibits fell within the business records exception to the rule against hearsay and, therefore, were admissible, there is nothing in the record to suggest that it relied on the defendant's evidence as a result of an incorrect application of law. Rather, our review of the record reveals that the court

On the basis of our review of the Saporita affidavit, we conclude that (1) Saporita's employment as an assistant vice president of the defendant, and the related averments, evince her role as a records custodian authorized to authenticate the defendant's business records without her actual involvement in the transaction and (2) the affidavit sufficiently demonstrated Saporita's competency to aver to the information therein. Therefore, we conclude that the court did not err in considering the Saporita affidavit, along with the annexed exhibits, in granting the defendant's motion for summary judgment.

B

We next turn to the plaintiff's claim that the Kolakowski affidavit did not constitute competent evidence pursuant to Practice Book § 17-46. Specifically, the plaintiff argues that Kolakowski was not competent to attest to the authenticity of certain Probate Court records annexed to the Kolakowski affidavit, which related to the administration of the Lopez estate, because he "was not among the attorneys involved in the probate proceedings, and did not have custody of the Probate Court file before, during, or after preparing the [defendant's] motion [for summary judgment]." Accordingly, the plaintiff posits, the appended Probate Court records should not have been considered by the court because they were not properly authenticated by the Kolakowski

---

considered the arguments raised by the parties during the hearing on the motion for summary judgment and in their respective briefs, which included the defendant's argument that the business records exception applied. The plaintiff did not seek an articulation from the court on its analysis of this issue thereafter; we therefore presume that the court applied the law correctly in considering the defendant's evidence. See *State* v. *James K.*, 209 Conn. App. 441, 465, 267 A.3d 858 (2021) ("In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, the burden rests with the appellant to demonstrate reversible error." (Internal quotation marks omitted.)), aff'd, 347 Conn. 648, 229 A.3d 243 (2023).

affidavit. Because we conclude that the plaintiff's claim is unpreserved, we decline to review it.

The following additional procedural history is relevant. In support of its motion for summary judgment, the defendant submitted Probate Court records that reflect a court-approved agreement between the plaintiff and the Lopez estate to settle the plaintiff's claim against the estate for amounts owed in connection with the proceeds contract. In the plaintiff's memorandum of law in opposition to the defendant's motion for summary judgment, it argued that the court should not consider the Probate Court records because they were not authenticated and, therefore, were uncertified in violation of Practice Book § 17-46. Thereafter, the defendant filed simultaneously its reply brief and the Kolakowski affidavit, attached to which were the Probate Court records. During the hearing on the defendant's motion for summary judgment, the plaintiff did not argue that the Kolakowski affidavit was defective in any way. In fact, the hearing transcript is silent as to the Kolakowski affidavit.

The plaintiff's challenge to the Kolakowski affidavit was raised for the first time in the plaintiff's motion to reargue. In denying the plaintiff's motion to reargue, the court stated in part that "the reasons provided by the plaintiff are . . . ones that could have been raised in its original opposition. The plaintiff has not shown any mistake in the application of law or a misunderstanding of the facts presented. [A] motion to reargue cannot be used to correct the deficiencies in a prior motion . . . ." (Internal quotation marks omitted.) The plaintiff on appeal does not challenge the court's denial of the motion to reargue.

"It is well known that this court is not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book

§ 60-5. The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis omitted; internal quotation marks omitted.) *Gainty* v. *Infantino*, 222 Conn. App. 785, 802, 306 A.3d 1171 (2023), cert. denied, 348 Conn. 948, 308 A.3d 36 (2024).

Our examination of the record reveals that the plaintiff raised the claim that the Kolakowski affidavit was not competent evidence with the trial court for the first time in its motion to reargue and is not challenging the court's denial of that motion in the present appeal. The plaintiff's claim, therefore, is not properly before this court. Accordingly, we decline to review it. Cf. *Wethington* v. *Wethington*, 223 Conn. App. 715, 726 n.10, 309 A.3d 356 (2024) (concluding that issue raised for first time in motion to reargue was reviewable when, inter alia, defendant claimed on appeal that court abused its discretion in denying motion).

II

The plaintiff next claims that the trial court improperly rendered summary judgment in the defendant's favor because there were genuine issues of material fact as to both counts of the operative complaint. We reject this claim.[8]

---

[8] The plaintiff also claims that the court erred in making factual findings in rendering summary judgment in the defendant's favor. See, e.g., *Belgada* v. *Hy's Livery Service, Inc.*, 220 Conn. App. 102, 111, 297 A.3d 199 (2023) ("[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.)). On the basis of our review of the court's decision, we conclude that the court did not engage in fact-finding;

We begin by setting forth our standard of review and additional legal principles relevant to our resolution of this claim. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant . . . [a] motion for summary judgment is plenary." (Footnote omitted; internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, supra, 216 Conn. App. 539–40.

---

rather, applying the correct legal standard, the court determined that the defendant had established the absence of genuine issues of material fact and that, once the burden had shifted to it, the plaintiff had failed to prove the existence of any genuine issue of material fact.

## A

As to count one, the plaintiff contends that there was a genuine issue of material fact as to whether it was an intended third-party beneficiary of the mortgage. The plaintiff maintains that the court improperly construed the mortgage to provide, in clear and unambiguous terms, that the parties to the mortgage did not intend for the plaintiff to be a third-party beneficiary thereof. We disagree.

"Whether a party is a third party beneficiary of a contract is a question of the intent of the contracting parties." *Connecticut Housing Finance Authority* v. *John Fitch Court Associates Ltd. Partnership*, 49 Conn. App. 142, 146, 713 A.2d 900, cert. denied, 247 Conn. 908, 719 A.2d 901 (1998). "When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . [When] there is definitive contract language, [however] the determination of what the parties intended by their contractual commitments is a question of law. . . . It is implicit in this rule that the determination as to whether contractual language is plain and unambiguous is itself a question of law subject to plenary review. . . . We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract effect according to its terms. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of

the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *CCI Computerworks, LLC* v. *Evernet Consulting, LLC*, 221 Conn. App. 491, 503–504, 302 A.3d 297 (2023).

"[O]ur courts have continued to refer to the intent of the parties to create a *direct obligation* between the promisor and the beneficiary as the test for determining whether a nonparty to the contract is a third party beneficiary thereof. . . . In determining whether a person has a right of action as a third party beneficiary, [t]he ultimate test to be applied . . . is whether the intent of the parties to the contract was that the promisor should assume a *direct obligation* to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Further, [t]he intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but *what intention is expressed in the language used*. . . . Because [a] promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such . . . we turn to the express language in each of the loan instruments [as applicable]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Connecticut Housing Finance Authority* v. *John Fitch Court Associates Ltd. Partnership*, supra, 49 Conn. App. 147.

Section 5 of the mortgage, titled "Property Insurance," provides in relevant part: "In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. . . . Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. . . ."

In rendering its decision as to count one, and, specifically, in considering the question of whether the plaintiff was a third-party beneficiary, the court reviewed both the note and the mortgage and concluded that "the note and mortgage concerned only Lopez' promise to pay back the amounts loaned to him and the mortgage was meant to protect the lender from any losses if all payments were not made. Additionally, section 5 of the mortgage specifically provided that '[f]ees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.' Neither the

note nor the mortgage referenced [the plaintiff], directly or indirectly, as a direct or intended beneficiary of those contracts. The language is clear that Lopez was the sole obligor on any contracts with third parties, such as [the plaintiff]. . . . While the plaintiff points to language in section 5 regarding the payment of insurance proceeds for restoration and repair, this section states that in the event of loss, 'any insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened,' unless the lender and the borrower agree otherwise. The burden shifted to the plaintiff to raise issues of fact regarding its claims of being a third-party beneficiary, and it has failed to do so." (Citation omitted.)

For the reasons that follow, we agree with the court's reasoning that the language used in the note and the mortgage dispel any notion that the plaintiff was an intended third-party beneficiary thereof. As an initial matter, there is no direct or indirect reference to the plaintiff in either the note or the mortgage. Lopez was the sole signatory to the note as a borrower, and only Lopez and Trusty were signatories to the mortgage as coborrowers. Second, § 5 of the mortgage, governing "Property Insurance," does not require that the defendant make direct payments of insurance proceeds to a third party such as the plaintiff and further provides that insurance proceeds shall cover repairs made to the property "if the restoration or repair is economically feasible and Lender's security is not lessened," "[u]nless Lender and Borrower otherwise agree in writing." Third, the purpose of § 5 of the mortgage is to protect the defendant's interests and not to serve as a guarantee on the payment of repair and restoration services, the obligation of which belonged to the borrower. In sum, the clear and unambiguous language of the foregoing provisions, read collectively, evinces no intent of the

contracting parties to confer third-party beneficiary status to the plaintiff.

The plaintiff relies on the isolated portion of § 5 of the mortgage providing that "any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened" to contend that there is ambiguity as to whether it was intended to be a third-party beneficiary of the mortgage, thereby creating a factual issue regarding the intent of the parties to the mortgage. According to its reading of this language, the plaintiff posits that "*any* insurance proceeds" distributed following a loss must be used to pay the plaintiff because it is "the one responsible for 'restoration or repair of the Property.'" (Emphasis altered.) We iterate that "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous" and that "[t]he contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *CCI Computerworks, LLC* v. *Evernet Consulting, LLC*, supra, 221 Conn. App. 503–504. Further, the plaintiff disregards the prefatory clause directly preceding the mortgage provision on which it relies, namely, "Unless Lender and Borrower otherwise agree in writing . . . ." As we explain in the preceding paragraph, when read collectively, the relevant portions of § 5 of the mortgage are clear and unambiguous in evincing no intent by the parties to the mortgage to confer third-party beneficiary status on the plaintiff.

In addition, the plaintiff argues that there was extrinsic evidence that sufficiently raised a genuine issue of

material fact regarding the plaintiff's third-party beneficiary status under the mortgage.[9] The plaintiff asserts that this extrinsic evidence assists in interpreting the relevant contractual terms on the question of intent and supports the position that the plaintiff is a third-party beneficiary under the mortgage. As we set forth earlier, however, "[t]he question is not what intention existed in the minds of the parties but *what intention is expressed in the language used.*" (Emphasis in original; internal quotation marks omitted.) *Connecticut Housing Finance Authority* v. *John Fitch Court Associates Ltd. Partnership*, supra, 49 Conn. App. 147. Because, as we have concluded, the clear and unambiguous language of the note and the mortgage reflects no intent to make the plaintiff a third-party beneficiary thereof, the use of parol evidence to vary or contradict such language is forbidden. See *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 323–24, 186 A.3d 771, cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018).

In sum, we conclude that the court properly determined that the note and the mortgage, in clear and unambiguous terms, evinced no intent for the plaintiff to be a third-party beneficiary thereof and that there was no genuine issue of material fact barring the rendering of summary judgment as a matter of law in the defendant's favor on count one.

B

As to count two, the plaintiff claims that there existed genuine issues of material fact regarding its unjust enrichment claim. We are unpersuaded.

---

[9] Specifically, the plaintiff cites (1) averments made in the Leone affidavit, (2) averments made in the Saporita affidavit, (3) evidence of payments from the proceeds made by the defendant to the plaintiff, and (4) a disclosure filed by the plaintiff on March 14, 2022, of an expert witness, who, according to the plaintiff, would offer testimony relating to the third-party beneficiary issue, "as the issue of whether the plaintiff was an intended beneficiary under the mortgage is of a particularly complex nature . . . ."

"Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. . . . In order for the plaintiff to recover under the doctrine, it must be shown that the [defendant] [was] benefited, that the benefit was unjust in that it was not paid for by the [defendant], and that the failure of payment operated to the detriment of the plaintiff." (Internal quotation marks omitted.) *CCI Computerworks, LLC* v. *Evernet Consulting, LLC*, supra, 221 Conn. App. 508.

In rendering summary judgment in the defendant's favor on count two, the court stated in relevant part that "the plaintiff claims that the defendant was unjustly benefited because the plaintiff performed the work at the property and the defendant . . . applied the sales proceeds[10] to the note and mortgage, instead of paying the plaintiff. Specifically, the plaintiff's work enriched the defendant because the repair work increased the value the defendant was able to obtain for the [property]. In an unjust enrichment case, '[t]he question is: did he, [the party liable] to the detriment of someone else, obtain something of value to which he was not entitled?' . . . *Piccolo* v. *American Auto Sales, LLC*, [195 Conn. App. 486, 496, 225 A.3d 961 (2020)]. The defendant bargained to be legally entitled to the maintenance of the value of its collateral without additional expenses under the mortgage's terms. Additionally, the defendant was not a party to the proceeds contract and had no obligation to make any of the payments due under that agreement." (Footnote added.)

The plaintiff asserts that the court overlooked evidence that it submitted demonstrating that its repair work benefited the defendant by enhancing the marketability of the property while causing the plaintiff to

---

[10] Although the court refers to "sales proceeds," we presume the court was addressing the insurance proceeds as discussed in this opinion.

incur a monetary loss.[11] As the court determined, however, the defendant established that there was no genuine issue of material fact that it did not " 'obtain something of value to which [it] was not entitled' " because it was "legally entitled to the maintenance of the value of its collateral without additional expenses under the mortgage's terms . . . ." In other words, the court concluded that the defendant was *not* "benefited" for purposes of the plaintiff's unjust enrichment claim when it applied the proceeds toward the outstanding mortgage loan balance.[12] In fact, the record reflects that, at the time Trusty requested that the defendant apply the remaining proceeds available to pay down the outstanding mortgage loan balance, the available insurance proceeds were insufficient to cover the balance (leaving the estate to pay the remaining balance). Simply put, the defendant demonstrated that it did not receive more than it was entitled to under the loan. Because the defendant's evidence demonstrated that there was no genuine issue of material fact relating to this element of the plaintiff's claim, the plaintiff was obligated to set forth sufficient evidence to raise a genuine issue of material fact that it has a superior equitable entitlement to the proceeds. The plaintiff failed to do so.[13]

[11] Specifically, as supporting evidence, the plaintiff refers to (1) averments made in the Leone affidavit and (2) its expert witness disclosure filed on March 14, 2022.

[12] The plaintiff also claims that the court "incorrectly ma[de] equitable determinations in contravention of [the] standard on this disposition of summary judgment." This claim is untenable under the same rationale that we set forth in footnote 8 of this opinion.

In addition, while citing no appellate authority for the proposition, the plaintiff appears to raise a distinct contention that an unjust enrichment claim, given its equitable nature, is not suitable for adjudication by way of a motion for summary judgment. This claim is without merit. Cf. *Professional Electrical Contractors of Connecticut, Inc.* v. *Stamford Hospital*, 196 Conn. App. 430, 442–43, 230 A.3d 773 (2020) (summary judgment on unjust enrichment claim, although available, was not proper when movant failed to demonstrate absence of genuine issue of material fact).

[13] The plaintiff argues that the trial court failed to consider the plaintiff's expert disclosure of James McConnon dated March 14, 2022, which,

In sum, we conclude that the court correctly determined that there were no genuine issues of material fact concerning either count of the operative complaint and that the defendant was entitled to summary judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.

---

according to the plaintiff, created a genuine issue of material fact with respect to each count. This argument is without merit.

It is well settled that any evidence considered in connection with a motion for summary judgment must be *admissible*. See *Hudson City Savings Bank* v. *Hellman*, 196 Conn. App. 836, 861, 231 A.3d 182 (2020) (court is limited to considering documents that would be admissible at trial); *Midland Funding, LLC* v. *Mitchell-James*, supra, 163 Conn. App. 655 ("[o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment"). An expert *disclosure* pursuant to Practice Book § 13-4—which is prepared, signed, and filed either by a self-represented party or a party's attorney (here, the plaintiff's attorney) and which is not signed by the expert witness identified therein—is not admissible evidence. Unlike the deposition testimony of an expert witness, an expert witness affidavit, or a written report of an expert witness, an expert witness disclosure has no evidentiary value. See, e.g., *Universal North America Ins. Co.* v. *Bentley*, Superior Court, judicial district of Fairfield, Docket No. CV-20-6100732-S (June 7, 2022) ("[a]n expert disclosure is not admissible evidence").